**Abdul Hamid SHAHANDEH–PEY, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 86–2890.**

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1987.

Decided Oct. 28, 1987.

---

David Rubman, Legal Assistance Foundation of Chicago, Chicago, Ill., for petitioner.

Jane A. Williams, Atty., Office of Immigration Litigation, Civil Div. Dept. of Justice, Washington, D.C., for respondent.

Before BAUER, Chief Judge, and POSNER, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Abdul Hamid Shahandeh–Pey ("Shahandeh") petitions for review of a final decision of the Board of Immigration Appeals ("board") denying his application for political asylum under § 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158 (1982), and ordering him deported from the United States. For the reasons stated below, we reverse the Board's decision and remand for further proceedings.

## I.

Shahandeh is an Iranian citizen. He was born on December 25, 1956 to a wealthy and prominent Iranian family. Shahandeh resided in Iran until the age of eighteen at which time his parents sent him abroad to study. He attended high school in Lebanon from 1974 to 1976 and language school

[*] The Honorable Hubert L. Will of the Northern District of Illinois, sitting by designation.

in Sweden from 1976 to 1978. Shahandeh returned briefly to Iran in 1978. Shahandeh's family was worried about the stability of the Shah's regime at that time, and they thought it best for him to leave the country again. In early 1978, Shahandeh applied for and received a student visa authorizing him to stay in the United States until August 1979. He has remained in this country beyond that date in violation of § 241(a)(2) of the INA, which prohibits the overstaying of a visa. In March of 1984, Shahandeh married Rhonda Brown, a United States citizen; the couple have two children, ages 5 and 4.

Since his arrival in the United States, Shahandeh has amassed an extensive criminal record. In January of 1981, he was convicted of burglary and sentenced to two years probation. One year later, Shahandeh was convicted of theft and sentenced to three years in prison. On June 16, 1983, the Immigration and Naturalization Service ("INS") began deportation proceedings against Shahandeh charging him with deportability on the grounds that he had overstayed his visa and that he had been convicted of two crimes. Shortly thereafter, Shahandeh was yet again convicted, this time for possession of heroin with intent to deliver and possession of pentazocine with intent to deliver. He was sentenced to a total of 3 years on each of these felony convictions, the sentences to run concurrently with that imposed for his conviction for theft.

At a June 14, 1984 hearing, the immigration judge found Shahandeh deportable, but he adjourned the hearing to allow Shahandeh to submit an application for political asylum. Shahandeh's deportation hearing was reconvened on March 26, 1986. At that time, the INS further charged him with deportability under § 241(a)(11) of the INA. That provision authorizes the deportation of an alien "who at any time has been convicted of a violation of ... any law relating to the illicit possession of or traffic in drugs or marihuana" *Id.* Shahandeh conceded deportability on the new charge. The judge, however, granted him additional time to file an updated application for political asylum.

Shahandeh filed his updated application for political asylum approximately one week later, and the immigration judge forwarded the application to the Bureau of Human Rights and Humanitarian Affairs of the Department of State for an advisory opinion.

In his asylum application, Shahandeh cited his many years in the west and his father's role in the Shah's government and he expressed his fear that he would be executed if forced to return to Iran. The application stated that in 1982 the Khomeini regime executed Shahandeh's father, a colonel in the Shah's Ministry of War, even though he had cooperated with the Khomeini forces after the Shah's downfall. The application further described how Khomeini's soldiers ransacked Shahandeh's family home in Iran and jailed and interrogated his mother, a politician who ran for parliament during the Shah's reign. Approximately three months after her arrest and subsequent detention, Shahandeh's mother escaped to Spain. She then continued on to Austria where, the application stated, she now lives with Shahandeh's sister. Shahandeh's asylum application also included three letters written by his mother in Persian (with certified translations) describing the above events, and a State Department report that described the Khomeini regime as having one of the worst human rights records in the world.

On April 25, 1986, the State Department issued an advisory opinion concluding that Shahandeh had established a well-founded fear of persecution.

The immigration judge reconvened Shahandeh's deportation hearing on May 22, 1986, in order to consider his application for political asylum. Before Shahandeh was permitted to introduce any favorable evidence into the record on the merits of his application, however, the immigration judge summarily determined that Shahandeh's drug conviction rendered him statutorily ineligible for both political asylum and withholding of deportation. The judge ordered him deported to Austria, and if Austria would not accept him, to Iran.

On appeal, the board affirmed the immigration judge's finding that Shahandeh was ineligible for withholding of deportation due to the statutory bar for persons convicted of serious crimes. However, the board reversed the immigration judge's holding that the same bar precluded Shahandeh's eligibility for political asylum. Rather, the board held that it has discretion to grant political asylum to a person who is statutorily barred from withholding of deportation. Nevertheless, the board, exercising its discretion, denied the application for political asylum on the ground that Shahandeh's drug conviction represented criminal behavior constituting "a danger to the community of the United States."

Shahandeh filed this petition for review shortly after he was notified that Austria would not accept him. He challenges the board's decision on three grounds. First, he contends the board failed to consider and weigh all relevant factors, especially his well-founded fear of persecution. Second, Shahandeh argues that the board reached its decision on an incomplete record. This resulted, he alleges, from the board's failure to remand the case after reversing the immigration judge's decision on Shahandeh's ineligibility for political asylum. Shahandeh thus claims he was denied political asylum without ever having had an opportunity to present evidence on his behalf before an immigration judge. Finally, Shahandeh argues that the board's failure to remand deprived him of a hearing in violation of the due process clause of the fifth amendment.

## II.

■ Section 208(a) of the INA, 8 U.S.C. 1158, provides in relevant part that an alien applicant "may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A) of the Act...." The Attorney General has delegated to the Board of Immigration Appeals authority to make these discretionary asylum decisions as to aliens under deportation proceedings. 8 C.R.F. § 3.1(b)(2) (1986). Although our review of the board's findings is limited, see 8 U.S.C. § 1105a(a)(4), if we find the board's denial of an application for a discretionary grant of political asylum is arbitrary, capricious, or an abuse of discretion, or if it violates procedural rights required by law, we must reverse. *Carvajal–Munoz v. INS*, 743 F.2d 562, 568 (7th Cir. 1984). This circuit has adopted the following standard to determine when the board can be charged with an abuse of discretion:

> [The board's decision] will be upheld unless "it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group."

*Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1265–66 (7th Cir.1985) (citations omitted).

Here Shahandeh argues that the board's denial of political asylum was an abuse of discretion because (1) although the board claimed to exercise its discretion by balancing adverse factors against favorable factors, the board failed to balance all of the "central" factors, and (2) the board exercised its discretion on an incomplete record.

The balancing test to which Shahandeh and the board's opinion refer, requires that "upon review of the record as a whole, the immigration judge ... balance the positive and adverse matters to determine whether discretion should be favorably exercised." *Matter of Marin*, 16 I & N Dec. 581, 586 (BIA 1978).

Factors which the board has deemed favorable to applicants for asylum include: (1) family ties within the United States; (2) residence of long duration in United States; (3) evidence of hardship to alien and family if deportation occurs; (4) service in this country's armed forces; (5) history of employment; (6) existence of property or business ties or evidence of value and service to the community; (7) proof of genuine rehabilitation if a criminal record exists; and (8) evidence attesting to the alien's good character (i.e., affidavits from family, friends, and responsible community representatives). *Matter of Marin*, 16 I & N Dec. at

584–85. Among the factors the board has deemed adverse to an alien's application for asylum include: (1) the nature and underlying circumstances of the exclusion ground at issue; (2) presence of additional significant violations of immigration laws; (3) the existence of a criminal record and if so, its nature, recency, and seriousness, and (4) any other evidence indicative of an alien's bad character or undesirability as a permanent resident of this country. *Id.; Matter of Salim,* 18 I & N Dec. 311 (BIA 1982).

Although in any individual case one or more of the adverse factors may ultimately determine whether the board grants political asylum, the presence of adverse factors does not preclude a favorable decision. *See Vissian v. INS,* 548 F.2d 325 (10th Cir.1977); *Matter of Marin,* 16 I & N Dec. at 584.

Here, Shahandeh makes a convincing case that the board failed to weigh the relevant factors before reaching a decision. Our review of the board's opinion reveals a decision based on the weighing of only two favorable factors—Shahandeh's residence in this country since 1978 and his American wife and children. Remarkably, not once in the board's opinion is Shahandeh's well-founded fear of persecution even discussed, much less weighed against unfavorable factors. The board simply fails to mention any evidence relating to Shahandeh's political asylum claim, including the State Department's advisory letter, the murder of Shahandeh's father, the detention of his mother, or the well-known human rights abuses of the Khomeini government.

In a related argument, Shahandeh contends that because the immigration judge erroneously held that he was statutorily ineligible for asylum, he was precluded from introducing any evidence in support of his application. Shahandeh contends therefore that the board reached its decision on an incomplete record. Absent from the record, according to Shahandeh, is substantial evidence relating to the degree of hardship to Shahandeh's family should he be deported; proof of history of employment; and evidence of a genuine rehabilitation. The board's own precedents support Shahandeh's claim that, if proven, these factors have the potential for affecting the ultimate outcome of Shahandeh's case. *See Matter of Marin,* 16 I & N Dec. at 584.

In response to these arguments, the INS first claims that the board "must have examined the record *de novo* including the asylum application and the appended materials, to have gleaned the information it recited regarding [Shahandeh's] family which was not discussed in the immigration judge's opinion." Respondent's Br. at 17. In particular, the INS points to the fact that the board's opinion refers to Shahandeh's residence in the United States since 1978 and his American wife and children as well as his conviction for a narcotics offense. Thus, the INS contends that Shahandeh's "extensive criminal record was correctly found to outweigh any mitigating equities presented, from which it can be reasonably concluded that the [board] did in effect balance the factors before determining that asylum should not be granted as a matter of discretion." Second, the INS contends that "regardless of the favorable factors which petitioner did—or could have presented, the negative factors could not be overcome." Respondent's Br. at 17.

The INS's reconstruction of the board's decision is incorrect. To begin with, the INS errs in claiming that the board effectively gave preclusive effect to Shahandeh's narcotics conviction. At no point in the opinion did the board say that regardless of the favorable factors which the petitioner did—or could have presented, the negative factors could not be overcome. Rather, the board merely stated that Shahandeh had not demonstrated that he warranted asylum in the exercise of discretion. This is substantially different from holding that regardless of any favorable factors that Shahandeh did or *could* have presented, the negative factors could not be overcome. Thus, we cannot accept the INS's assertion that the presence of additional evidence "would not have affected the ultimate outcome of this case." Respondent's Br. at 23. The INS's statement that "asylum would have been denied regardless as a matter of discretion" is the equivalent of

saying that Shahandeh's criminal record rendered him ineligible for political asylum, a position, we note, the board itself rejected.

We also cannot accept the INS's claim that the board in reaching its decision "must have examined the record *de novo* including the asylum application and the appended materials to have gleaned the information it recited regarding [Shahandeh's] family which was not discussed in the immigration judge's opinion." We, of course, recognize that the board may have reason to discredit evidence favorable to a petitioner for reasons that are within its expertise; but, if the board articulates no reasons, we are unable to discharge our statutory obligation of review. To affirm on a theory that even in the absence of any discussion, the board considered and rejected favorable evidence would "free the Board of its obligation to articulate a reasoned basis for its decision, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion." *Santana–Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981). *See also Sotto v. INS*, 748 F.2d 832 (3d Cir.1984).

Clearly, Shahandeh's criminal record (particularly his drug conviction) is an adverse factor that can only be overcome with a showing of "outstanding" or "unusual" countervailing equities. *Matter of Marin*, 16 I & N at 586 n. 4. Whether this case presents such equities must await a decision that weighs all relevant evidence. A full examination of all the evidence is especially called for by the extreme consequences that may well befall Shahandeh if deported. Here Shahandeh's most compelling equity—the persecution he asserts he will suffer if forced to return to Iran—was either ignored, or overlooked by the board; at best, it was considered and rejected without mention. In a matter of such grave consequences, it is imperative that all aspects of the case be fully considered and that the board's decision reflect this deliberation. A decision that does not reflect, even at some minimal level, consideration of important aspects of an individual's claim is one made, for all a reviewing court can know, "without rational explana-tion." Therefore, we conclude that the board abused its discretion in denying Shahandeh's application.

### III.

In addition to arguing that the board abused its discretion, Shahandeh contends that by denying him the opportunity to present countervailing evidence the board violated his right to due process. To comport with due process, Shahandeh argues, the board must remand the case to an immigration judge to provide him with a reasonable opportunity to introduce evidence into the record.

■ In response to Shahandeh's due process argument, the INS maintains that "to prevail upon the due process claim ... [Shahandeh] must establish that *but for* the alleged constitutional violation, he would have been granted the discretionary relief sought." Respondent's Br. at 14 (emphasis added). The INS here errs as a matter of law. Under the correct standard, an alien must "produce some concrete evidence indicating that the violation of a procedural protection actually had the *potential* for affecting the outcome of ... deportation proceedings." *United States v. Cerda–Pena*, 799 F.2d 1374, 1379 (9th Cir.1986) (emphasis added).

■ Shahandeh satisfies this standard. Since the board applied a balancing test to determine eligibility and did not give preclusive effect to Shahandeh's criminal record, exclusion of favorable evidence had the "potential" to affect the outcome of his case. It may be unlikely that, given Shahandeh's drug conviction, presentation of additional favorable evidence would tip the scales in favor of a discretionary grant of asylum. However, the correct test requires only that the evidence have a potential affect on the outcome. Under this standard, we find that the board violated due process when it failed to remand Shahandeh's case to the immigration judge for a hearing.

### IV.

In conclusion, we reiterate that it is not our purpose to hold that certain evidence requires the board to reverse its decision. Rather, without prescribing any final result, we remand to permit Shahandeh to have his day in court and to present all relevant evidence in support of his application for asylum. Accordingly, we vacate the order of deportation and remand the case to the board for further proceedings consistent with this opinion.