996 F.2d 1219
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jerzy RYBICKI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-3230.
 United States Court of Appeals, Seventh Circuit.
 Argued April 20, 1993.
Decided June 9, 1993.
 
 Before COFFEY, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Jerzy Rybicki is a native of Poland who was active in the Solidarity movement during the early 1980s. As a result of his Solidarity activities, Rybicki was interrogated by police a number of times, arrested and beaten, his apartment was searched and he was allegedly subjected to discriminatory treatment in the workplace. In 1985, he left Poland and entered the United States without inspection. Rybicki applied for political asylum and withholding of deportation but was denied. The Board of Immigration Appeals ("BIA") dismissed Rybicki's appeal, and he seeks review of the Board's decision. We affirm.
 
 I. Background
 
 2
 Rybicki was born in Lomza, Poland in 1960. In 1980, he became involved in the Solidarity movement at his place of employment and participated in three or four labor strikes. Shortly thereafter, Rybicki moved from Lomza to Nowa Huta, Poland were he attended a trade school. While in school, Rybicki continued to be active in the Solidarity movement by distributing brochures, painting Solidarity slogans on walls, and participating in a campaign urging Poles to boycott the 1982 election. In May 1983, Rybicki was arrested and charged with disorderly conduct for disrupting a May Day demonstration. He was detained for forty-eight hours, fined 25,000 zlotys (the equivalent of ten week's wages) and released. Certified Record at 64. In June 1983, Rybicki was photographed by police while he distributed Solidarity leaflets at a rally attended by Pope John Paul II. After this rally, the police searched Rybicki's apartment and left a summons requiring Rybicki to appear at Police headquarters. While at headquarters, police interrogated Rybicki regarding his Solidarity activities, and requested information about the leaders of the movement. When Rybicki refused to reveal any information, the police began beating him with their clubs and fists. Between June and December of 1983, Rybicki was summoned to police headquarters on five or six occasions for further interrogation. In addition, Rybicki claimed to have been discriminated against in the workplace as a result of his Solidarity activities.
 
 
 3
 From December of 1983 through 1985 Rybicki was never questioned about his Solidarity activities. In 1985, Rybicki left Poland. After initially being denied a visa, Rybicki obtained a Polish passport through a friend. During a stop-over in Canada, he inquired about seeking asylum and was told he needed to apply immediately and was forbidden to leave the airport. But he left Canada for Mexico anyway, and entered the United States near Brownsville, Texas without inspection in October 1985. His initial application for asylum in 1987, was denied, and deportation proceedings were begun.
 
 
 4
 Since coming to the United States, Rybicki has been continuously employed, and has never been arrested. He currently lives with and financially supports his son, Michael Jerry Rybicki, born July 21, 1989 in Chicago, Illinois and the child's mother.
 
 
 5
 Rybicki's application for political asylum and withholding of deportation was denied on April 12, 1991 and he was granted voluntary departure. Taking administrative notice that Solidarity was now part of the coalition government of Poland and that Solidarity's leader was elected president of Poland, the immigration judge determined that Rybicki had failed to show either a well-founded fear of persecution or past persecution and that even had Rybicki demonstrated persecution, it was not of such severity to render inhumane his return to Poland. The Board upheld the immigration judge's determination. Relying on this court's decision in Skalak v. INS, 944 F.2d 364 (7th Cir.1991), the Board held:
 
 
 6
 the record does not establish the respondent's past experiences in Poland would "so sear a person with the distressing associations with his native country that it would be inhumane to force him to return there, even though he is in no danger of further persecution."
 
 
 7
 Order Aug. 19, 1992.
 
 
 8
 On appeal, petitioner challenges the Board's decision on two grounds. First, he asserts that the Board erred in failing to assess his statutory eligibility by examining the evidence of post persecution under a "cumulative" test. Second, he argues that the Board abused its discretion by failing to consider and to weigh all favorable as well as negative factors when exercising its discretion to deny asylum where past persecution has been established.
 
 II. Analysis
 
 9
 Political asylum may be granted to an alien applicant who demonstrates that he meets the statutory definition of a "refugee," defined by section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A), as one who is unable or unwilling to return to his or her country because of past persecution, or a well-founded fear of persecution, on account of "race, religion, nationality, membership in a particular social group, or political opinion." INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992).
 
 
 10
 Refugee status is a factual determination, which the court must uphold if it is "supported by reasonable, substantial, and probative evidence on the record as a whole." 8 U.S.C. § 1105a(a)(4); Sivaainkaran v. INS, 972 F.2d 161, 163 (7th Cir.1992). Reversal is warranted under the substantial evidence standard of review, only if the evidence is so "compelling that no reasonable factfinder could fail to find the requisite [ ] persecution." Elias-Zacarias, 112 S.Ct. at 817. Although the term persecution is not defined by the Act, this court has described it as " 'punishment' or 'the infliction of harm' for political, religious, or other reasons that are offensive." Sivaainkaran, 972 F.2d at 164 n. 2; Balazoski v. INS, 932 F.2d 638, 642 (7th Cir.1991) (at a minimum, persecution includes conduct which threatens "life or freedom"). Beyond this, we decline to isolate any specific act from the spectrum of a government's adversarial encounters with its citizens and label it "persecution" for the purposes of establishing refugee status under the Act. See Skalak, 944 F.2d at 365.
 
 
 11
 If the asylum applicant qualifies as a "refugee," then he or she is statutorily eligible for political asylum; however, the decision whether to grant asylum remains within the discretion of the Board.[1] 8 U.S.C. § 1158(a); Kaczmarczyk v. INS, 933 F.2d 588, 593 (7th Cir.), cert. denied, 112 S.Ct. 583 (1991). The Board's discretionary decision to deny political asylum to a statutorily eligible alien is reviewed under an arbitrary and capricious standard. Kaczmarczyk, 933 F.2d at 593.
 
 
 12
 Rybicki does not dispute that he was unable to demonstrate a well-founded fear of persecution because of the changed political conditions in Poland. See generally Skalak v. INS, 944 F.2d 364 (7th Cir.1991) (BIA can take notice that Solidarity is now part of the coalition government of Poland and its members are no longer being persecuted by Polish government); Kaczmarczyk, 933 F.2d at 594 (same). Rather, he challenges the determination that he was not a refugee under the Act because he failed to make the alternative showing of past persecution.[2] To show past persecution the applicant need only establish that objective fact, whereas a claim of fear of future persecution requires proof of both subjective and objective elements. In re Chen, Int.Dec. 3104 at 5. Rybicki argues that the Board erred in both determining his statutory eligibility for asylum and in its decision that even if eligible, a discretionary grant of asylum was unwarranted.
 
 A. Past Persecution
 
 13
 Rybicki claims that the Board erred in not evaluating his evidence of past persecution under a "cumulative" test. Petitioner is correct that he has a "right to demand that the BIA engage in a careful, individualized review of the evidence presented." Kaczmarczyk, 933 F.2d at 595. Proving that the Board gave less than through review of the evidence presented, however, is petitioner's burden. Id.
 
 
 14
 Rybicki also takes issue with the immigration judge's reasoning that Rybicki's claim of past persecution was "not supported by any independent corroborative evidence."[3] Whether the immigration judge applied an incorrect legal standard is irrelevant, however, because it is the Board's decision that this court reviews not the decision of the immigration judge. Balazoski, 932 F.2d at 640; Kubon v. INS, 913 F.2d 386, 387 (7th Cir.1990). Thus, as long as the Board's decision is supported by substantial evidence in the record, it must be upheld.
 
 
 15
 At Rybicki's deportation proceeding, the immigration judge stated: "I do not find that these summons and the questioning of the [petitioner] concerning his Solidarity activities rise to the level of persecution within the meaning of the Act." Order April 12, 1991, at 5. Although the beating incident was unfortunate, it was not so serious that Rybicki sought medical attention or was unable to walk from the police station. Id. Rybicki's claim of persecution was also undermined by the fact that he continued to support Solidarity and reside in Poland for two years with no further contact with the police. Id. The evidence Rybicki offered is no more compelling than the evidence presented in other cases where this court has upheld the denial of asylum based on a claim of past persecution. See, e.g., Skalak, 944 F.2d at 365; Kubon, 913 F.2d at 388; Zalega v. INS, 916 F.2d 1257 (7th Cir.1990). Because Rybicki has failed to show how this evidence is insufficient to support a finding that he did not suffer past persecution, it is possible to end the analysis here. See Ravindran v. INS, 976 F.2d 754, 758 (1st Cir.1992) (because petitioner determined not to be a refugee, BIA need not examine asylum request on a discretionary basis); Kapcia v. INS, 944 F.2d 702, 709 n. 6 (10th Cir.1991) (petitioner's failure to establish refugee status rendered him ineligible for a discretionary grant of asylum); Gomez v. INS, 947 F.2d 660, 663 (2d Cir.1991) (alien failed to prove refugee status because lacked a well-founded fear of persecution, therefore, BIA did not consider whether alien merited a discretionary grant of asylum). Given our reluctance to define "past persecution," however, consideration of the humanitarian factors particular to the applicant's situation is helpful to delineate the contours of statutory eligibility.
 
 
 16
 B. Balancing test in discretionary asylum decisions
 
 
 17
 Assuming arguendo that Rybicki had established refugee status through past persecution, the immigration judge and the Board held that any past persecution was not so severe that a return to Poland would be inhumane. Rybicki argues that this decision was in error because the Board failed to give consideration to all relevant factors, both favorable and unfavorable, when exercising its discretion. Although a closer issue in this case, the factors considered were sufficient to conclude that denial of asylum for humanitarian reasons was not an abuse of discretion.
 
 
 18
 Once an applicant for asylum establishes statutory eligibility as a refugee as a result of past persecution, a rebuttable presumption arises in favor of granting asylum. Skalak, 944 F.2d at 365 (citing In re Chen, Int.Dec. 3104 at 4). The burden then shifts to the INS to present evidence militating against a favorable exercise of discretion. Id. In determining whether discretion should be favorably exercised, the immigration judge must review the record as a whole and conduct a balancing of the positive[4] with the adverse factors.[5] Shahandeh-Pey v. Ins, 831 F.2d 1384, 1387 (7th Cir.1987) (citing In re Marin, 16 I & N Dec. 581, 586 (BIA 1978)). Under the arbitrary and capricious standard, the Board's decision will be upheld "unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis." Osuch v. Ins., 970 F.2d 394, 396 (7th Cir.1992); Shahandeh-Pey, 831 F.2d at 1387.
 
 
 19
 Review of the Board's decision here reveals that it considered only whether the persecution suffered was sufficiently severe to warrant a discretionary grant of asylum for humanitarian reasons. Neither the Board's opinion nor that of the immigration judge mention any factors favorable for asylum such as petitioner's family ties in the United States, evidence of hardship to Rybicki or his family if deported, and the length of his period of residence in the United States. However, it does appear that a number of factors were considered, albeit most of them negative. The fact that Rybicki surreptitiously came into the country and did not seek asylum for two years worked against him. Also unfavorable was the fact that although gainfully employed throughout the duration of his stay, Rybicki was technically an illegal employee. These factors, coupled with the fact that any past persecution was not so severe as to warrant humanitarian relief, are sufficient to conclude that a denial of asylum was not an abuse of discretion.
 
 
 20
 This holding comports with the reasoning in Skalak, that where past persecution alone is in issue, the balance will tip in the alien's favor only if the past persecution was atrocious. Defining the term "persecution" as such arguably serves the function of asylum, that is: "to identify persecution so severe that perhaps a person should not be forced to return to the country in which [ ]he underwent it even if the danger of recurrence is negligible." Skalak, 944 F.2d at 365. In this regard, Rybicki's request that the Board engage in a more thorough balancing test is unwarranted, because he failed to establish that it would be inhumane to return him to Poland.
 
 III. Conclusion
 
 21
 The Board's decision to uphold the factual determination that Rybicki did not establish refugee status through past persecution is supported by substantial evidence. Rybicki's argument that the board failed to review the evidence under a "cumulative test" lacks support under the current standard requiring that the factual determination of refugee status be upheld if supported by substantial evidence. Even if statutory eligibility had been satisfied, however, under the factors presented, we conclude that the Board did not abuse its discretion in denying asylum for humanitarian reasons.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The Attorney General has delegated to the Board of Immigration Appeals the authority to make the discretionary decision to grant or deny political asylum. 8 U.S.C. § 1158(a)
 
 
 [2]
 That past persecution and a well-founded fear of future persecution are alternative methods of establishing eligibility for refugee status is recognized by the plain language of the statute, 8 U.S.C. § 1101(a)(42)(A), and confirmed in case law. Skalak, 944 F.2d at 365; In re Chen, Int.Dec. 3104 (BIA 1989); Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988) ("past persecution, without more, satisfies the requirement of Section 101(a)(42)(A), even independent of a well-founded fear of persecution")
 
 
 [3]
 He argues that uncorroborated evidence of past persecution is sufficient where it is "credible, persuasive, and points to specific facts that give rise to an inference that the applicant has been ... singled out for persecution." Carvajal-Munoz v. INS, 743 F.2d 562, 574 (7th Cir.1984)
 
 
 [4]
 Among the favorable factors to be considered are: (1) family ties in the United States; (2) residence of long duration in the United States; (3) evidence of hardship to alien and family if deportation occurs; (4) history of employment; and (5) evidence attesting to the alien's good character. Shahandeh-Pey v. INS, 831 F.2d 1384, 1387 (7th Cir.1987)
 
 
 [5]
 Factors deemed adverse to an alien's application for asylum include: (1) the nature and underlying circumstances of the exclusion ground of deportation; (2) existence of additional violations of immigration laws; (3) existence of a criminal record; and (4) any other evidence indicative of an alien's bad character. Id. at 1388