**Nikola AKRAP, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 91–2825.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1992.

Decided June 26, 1992.

Mary L. Sfasciotti, argued, Chicago, Ill., for Nikola Akrap.

Fred Foreman, U.S. Atty., Criminal Div., Chicago, Ill., Lori L. Scialabba, Kristen A. Giuffreda, argued, Dept. of Justice, Office of Immigration Litigation, Washington, D.C., A.D. Moyer, Michael L. Harper, Samuel Der–Yeghiayan, I.N.S., Chicago, Ill., for I.N.S.

Before FLAUM and MANION, Circuit Judges, and SHADUR, District Judge.*

SHADUR, District Judge.

Nikola Akrap ("Akrap") petitions this Court for review of a final decision of the Board of Immigration Appeals ("BIA") that denied him relief under Immigration and Nationality Act ("Act") § 212(c), 8 U.S.C. § 1182(c),[1] and ordered him deport-

---

* Honorable Milton I. Shadur, of the Northern District of Illinois, is sitting by designation. Because this opinion conflicts with the opinion of the Court of Appeals for the Eleventh Circuit in *Fleary v. INS,* 950 F.2d 711, 712–13 (11th Cir. 1992), it has been circulated among all judges of this court in regular active service pursuant to

Circuit Rule 40(f). No member of the court requested a rehearing *en banc.*

1. All further citations to provisions of the Act will take the form "Section ___," referring to the Act's internal section numbering rather than to the section's placement in the United States Code. We will, however, also include the full

ed. Akrap also asks that we review BIA's denials of (1) his later request for a stay of deportation and (2) his motion to reopen the deportation proceedings. We lack jurisdiction to review the latter two decisions, and we affirm BIA's first decision.

### Factual and Procedural Background

Yugoslavian citizen Akrap was born in Zagreb, Croatia in 1959 and has been a lawful permanent resident of the United States since 1973. Akrap is married to United States citizen Ranka Baltic Akrap ("Ranka"), and together they have three United–States–born sons who were respectively eight, six and one years of age in August 1991. Akrap is the only son of Luca and Marko Akrap ("Luca" and "Marko"), and the two families have shared the occupancy of a two-flat Chicago building owned by the parents (R. 15).

Luca suffers from a number of physical problems—hypertension, hypothyroidism, hypercholesterolemia and severe osteoarthritis—and she has recently undergone surgery for a herniated disc (R. 257, 490). Marko developed non–Hodgkin's lymphoma during the summer of 1990 (R. 107–49). Akrap's counsel informs us that Marko died in September 1991 after having experi-

enced a relapse in July of that year (P.Br. 2, R. 66).

On October 15, 1985 Akrap was convicted in the Circuit Court of Cook County on five counts of delivery of cocaine, after pleading guilty to those charges (R. 481–87, 495–515). Akrap was paroled on July 29, 1988 (R. 489) after serving two years and nine months of his six-year sentence (R. 292, 500, 515). Since his release Akrap has been employed as an automobile mechanic, and together with Ranka he has invested in a livery business and two Chicago condominiums (R. 3–4, 61, 491).

On February 6, 1986 the Immigration and Naturalization Service ("INS") issued an "Order To Show Cause and Notice of Hearing," charging that Akrap was deportable under Section 241(a)(11)[2] because of his drug-related convictions (R. 456). At the ensuing deportation hearing Akrap admitted that he was deportable under Section 241(a)(11) (R. 232) but sought a waiver of deportability under Section 212(c).[3] In his March 7, 1989 decision Immigration Judge Thomas Pullen found that Akrap was statutorily eligible for Section 212(c) relief, but he denied Akrap's request as a matter of discretion and ordered him deported to Yugoslavia (R. 232–40).

citation to Title 8 as part of our initial reference to each provision of the Act.

**2.** Before 1990 Section 241(a)(11), 8 U.S.C. § 1251(a)(11), read:

> (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
>
> \* \* \* \* \* \*
>
> (11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation

of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate....

When Section 241(a) was amended in 1990, subsection (11) was omitted but its general principle was incorporated into the new Section 241(a)(2)(B).

**3.** Section 212(c), 8 U.S.C. § 1182(c), provides in relevant part:

> Aliens lawfully admitted for permanent resident who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions [that would otherwise make them excludable].

Although that provision literally refers only to the excludability of aliens seeking readmission to the United States, it has been applied in the context of Section 241 deportability as well (*Vergara–Molina v. INS*, 956 F.2d 682, 684 n. 1 (7th Cir.1992); *Variamparambil v. INS*, 831 F.2d 1362, 1364 n. 1 (7th Cir.1987)).

Akrap appealed the Immigration Judge's decision, but on July 2, 1991 BIA affirmed the decision and dismissed Akrap's appeal (R. 177–81). On August 2 Akrap filed a motion to reopen his deportation proceedings for the consideration of new evidence as to his father's health and as to political unrest in Yugoslavia and Croatia. Akrap simultaneously requested a stay of his deportation pending consideration of that motion (R. 1–9). On August 5 BIA denied his request for a stay of deportation, observing that "there is little likelihood that the motion [to reopen] will be granted" (R. 175).

On August 6 Akrap filed a petition for review in this Court, stating:

> The above-named Petitioner, pursuant to 8 U.S.C. Section 1105a, Public Law 87–301, seeks review of a final order of the Board of Immigration Appeals dated August 5, 1991, denying Petitioner's Motions to Reopen Deportation Proceedings and for a review of the Board's order of deportation dated July 2, 1991, ordering his deportation to Yugoslavia.

Of course the August 5 order had not at all denied (or actually ruled in any way on) Akrap's motion to reopen—it merely commented on its probable merits in the course of denying his motion for a stay of deportation. Ultimately BIA did deny Akrap's motion to reopen, but that did not take place until September 10 (R. 172–73). And Akrap did not then file a petition here for review of the September 10 order within 90 days of its issuance, as expressly required by Section 106(a)(1), 8 U.S.C. § 1105a(a)(1).

Instead, more than 60 days after that 90-day period had passed—on February 11, 1992—Akrap filed in this Court a "Motion to Consolidate for Judicial Review of the Orders of the Board of Immigration Appeals Dated July 2, 1991 and September 10, 1991 or in the Alternative for Leave to File Amended Petition for Review." Just under two weeks later (on February 24) we denied Akrap's motion to amend the petition for review and deferred ruling on the "motion to consolidate" pending the argument on the merits.

In light of the tortuous path marked out by Akrap and his counsel, our first task must be to determine just which issues we currently have jurisdiction to review. Only then will we be in a position to turn to the substantive merits of the case.

## Jurisdiction

■ Akrap's inaccurate and premature August 6 reference to BIA's having denied his motion to reopen obviously cannot serve as a petition for review of BIA's eventual September 10 denial of that motion.[4] Yet Akrap tries to bootstrap himself into that posture at page 1 of his Reply Brief:

> [On August 3, 1991] Petitioner had filed a motion to reopen with the Board alleging entitlement to asylum and reconsideration of his denied § 212(c) application as a result of new, emergent and unforeseen facts and circumstances. At the same time, Petitioner requested the Board to stay the deportation order, scheduled to take effect on August 6, 1991, pending his motion to reopen. The Board, on August 5, 1991 denied the stay because "there is little likelihood that the motion will be granted". (R. 175). The

---

**4.** This situation should be contrasted with that covered by Fed.R.App.P. 4(a)(2), "which treats a premature notice of appeal as if it had been filed after the entry of judgment" (*Metropolitan Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1222 (7th Cir.1991)). That Rule, which operates much like the "springing use" familiar to common-law conveyancers and students of the law of future interests, spares counsel from falling into an inadvertent trap if for example they mistakenly appeal from an order for final judgment before the actual Fed.R.Civ.P. 58 judgment document is generated. As *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, —— U.S. ——, 111 S.Ct. 648, 653, 112 L.Ed.2d 743 (1991) (emphasis in original) put it:

> In our view, Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment. In these instances, a litigant's confusion is understandable, and permitting the notice of appeal to become effective when judgment is entered does not catch the appellee by surprise.

Here any confusion on the part of Akrap's counsel was *not* understandable—nothing in the August 5 order spoke in terms of a *current* decision, rather than as a forecast of what might likely come in the future.

petition for review requested review of both the order of July 2, 1991, and the order of August 5, 1991, specifically as it pertained to the ruling on the motion to reopen. By September 10, 1991, the Board issued its formal ruling on the motion to reopen, which occurred before the 90 day statutory period for seeking review of the original deportation order had expired.

As we have already said, the August 5 order was not a decision on Akrap's motion to reopen. It was potentially reviewable (if at all) only for what it was: the denial of Akrap's motion for a stay of deportation pending the not-yet-acted-upon motion to reopen.

But no such potential exists before this Court. Because the "denial of a stay is not a 'final order of deportation' under 8 U.S.C. § 1105a(a) [Section 106(a)]" (*Bothyo v. INS*, 783 F.2d 74, 75 (7th Cir.1986); *Diaz–Salazar v. INS*, 700 F.2d 1156, 1159 (7th Cir.1983); *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)), there is no jurisdiction in a Court of Appeals to review such a denial. Any review of decisions regarding stays of deportation falls instead within the district courts' habeas corpus jurisdiction as now established in Section 106(a)(10), 8 U.S.C. § 1105a(a)(10) (*Bal v. Moyer*, 883 F.2d 45, 46–47 (7th Cir.1989) (per curiam); *Bothyo v. Moyer*, 772 F.2d 353, 355 (7th Cir.1985)).[5]

Because Akrap never filed a petition for review of BIA's September 10 decision denying his motion to reopen, that decision is not before us. Hence we lack jurisdiction to review it. Akrap tries to escape that consequence by arguing that Section 106(a)(6) somehow authorizes us to "consolidate" a review of BIA's September 10 order with our review of the underlying July 2 final order of deportation, even though he has not filed a petition for review of the later September 10 order. To

that end his "motion to consolidate" review of the two orders posits that a separate petition for review was not necessary because "review of the [September 10] order was automatically consolidated with review of the final order of deportation dated July 2, 1991, under Section 106(a)(6)."

That proposition is belied by the statutory language itself. Section 106(a), 8 U.S.C. § 1105a(a), provides as to consolidations:

> The procedure prescribed by, and all the provisions of chapter 158 of Title 28 shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title [Section 242(b)] or comparable provisions of any prior Act, except that—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (6) whenever a petitioner seeks review of an order under this section, any review sought with respect to a motion to reopen or reconsider such an order shall be consolidated with the review of the order.
>
> \*　　\*　　\*　　\*　　\*　　\*

That reference to "any review sought with respect to a motion to reopen ... such an order" plainly contemplates that review of the order disposing of the motion must be "sought" as a precondition to any consolidation. And the earlier text of Section 106(a) makes it equally clear that such review must be sought in accordance with the procedure outlined in Chapter 158 of Title 28. In that respect 28 U.S.C. § 2344 provides:

> Any party aggrieved by [a final order reviewable under this chapter] may within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.[6]

---

**5.** Both of the cited cases refer not to the text's citation of the statute but to the earlier numbering of the habeas corpus provision in the Act, then Section 106(a)(9), 8 U.S.C. § 1105a(a)(9).

**6.** Although that provision speaks of a 60–day period to seek review, a portion of Section 106(a) not quoted in the text—Section 106(a)(1)—grants 90 days after a final deportation order to petition for its review. That difference, one of the exceptions expressly provided

It is really tautological to hold that a party, in order to seek review of any final order, must file a petition for review of that order. Absent such a petition, review has not been "sought" and Section 106(a)(6) consolidation does not come into play.

In sum, the plain language of Section 106(a)(6) permits the consolidation of two reviews. But in the absence of a second petition for review, we are by definition engaged in only a single review, and there is nothing with which that single review can be consolidated. Section 106(a)(6) does not cure the lack of jurisdiction to review the September 10 order for which no petition to review has been filed. We therefore necessarily deny Akrap's February 11 "Motion to Consolidate for Judicial Review of the Orders of the Board of Immigration Appeals Dated July 2, 1991 and September 10, 1991"—the motion that our February 24 order deferred for later decision.

At the same time, we do not doom Akrap to the procedural pitfall suggested by *Fleary v. INS*, 950 F.2d 711, 712–13 (11th Cir.1992), which says that under Section 106(a)(6) the filing of a motion to reopen renders the *original* order nonfinal and therefore nonreviewable. In our view, the 1990 addition of Section 106(a)(6)[7] has put to rest any conflict that had previously existed on that issue (see, e.g., *Nocon v. INS*, 789 F.2d 1028, 1033 (3d Cir.1986) and *Hyun Joon Chung v. INS*, 720 F.2d 1471, 1474 (9th Cir.1984), which had adopted opposite positions under the old law). By its own terms that provision refers to the consolidation of two reviews (and not to the "consolidation" of BIA "orders" as *Fleary*, 950 F.2d at 713 suggests). If the filing of a motion to reopen were to render any previous orders non-final, only one final order would exist—and what then would be subject to "consolidation" even in the *Fleary* view?

In short, any such rule as *Fleary* prescribes would also be incompatible with the plain language of Section 106(a)(6). We hold that BIA's July 2 deportation order was a final order when issued, and it remained a final order notwithstanding Akrap's motion to reopen. And with Akrap having filed a timely petition for review of the July 2 order, we have jurisdiction to deal with it.

### July 2 Order of Deportation

Because BIA's decision is the final order of deportation, we review that decision and not that of the Immigration Judge (*Vergara–Molina*, 956 F.2d at 684). As already noted, the deportation order included BIA's denial of Akrap's request for a Section 212(c) waiver of deportability. Section 212(c) relief is available "in the discretion of the Attorney General," so that a denial of such relief is reviewable only for an abuse of discretion (*id.*, *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1246 (7th Cir.1991)). For that purpose our review is extraordinarily narrow (*id.*, 946 F.2d at 1246, citations omitted):

> Discretionary denials are reviewed for an abuse of discretion and are "limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." After weighing all of the factors, both favorable and unfavorable, the BIA must state its reasons for denying relief. A court of appeals does not have the authority to determine the weight to afford to each factor. This court will uphold a denial by the BIA unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis, e.g., invidious discrimination against a particular race or group.

In exercising its discretion (acting as a delegate of the Attorney General) as to Section 212(c) relief, BIA "balances the social and humane considerations in the alien's favor against any adverse factors that demonstrate his undesirability as a permanent resident in the United States" (*id.* at 1247, citing *In re Edwards*, Interim

---

for by the structure of Section 106(a), does not of course diminish the force of the principle stated in the text.

7. That provision was added as part of the Immigration Act of 1990, Pub.L. No. 101–649, § 545(b)(3), 104 Stat. 4978, 5065 (1990).

Decision 3134 at 6 (BIA 1990)). In this instance BIA relied on the factors that it had identified in *In re Marin,* 16 I & N Dec. 581 (BIA 1978) in striking that balance. It listed these "factors deemed adverse" (R. 179, quoting *Marin* at 584):

> [T]he nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.

As against those considerations BIA listed the "favorable factors" to be taken into account (R. 179, quoting *Marin* at 584–85):

> [F]amily ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives).

Finally BIA pointed to its more recent decision in *Edwards,* Interim Decision 3134 at 7, which stated that an alien who had engaged in "serious criminal misconduct" had to show "unusual or outstanding" equities in order to be granted Section 212(c) relief, and added that "[s]uch a heightened showing is required when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs."

**8.** Marko was still living when the July 2 order issued.

**9.** As Akrap points out, BIA mistakenly said that Akrap had been convicted on six delivery counts (R. 180) when in fact he had been convicted on

BIA then followed its own prescription. It recognized that a number of equities supported Akrap's request for relief. He had spent more than half of his life in the United States. Both his parents were also United States residents,[8] and they testified before the Immigration Judge that he is their only child, that they rely on him and that they would be "emotionally upset" if he were deported. Moreover, Akrap is married to a United States citizen and is the father of three children born in this country. As evidence of rehabilitation, BIA noted that Akrap had obtained an associate degree in applied sciences while incarcerated, had received good time off of his sentence and had complied with the terms of his probation. BIA also observed that Akrap had been employed as an auto mechanic since his release from prison in 1988 and had not been involved in any additional criminal conduct (R. 180).

BIA determined, however, that those equities were outweighed by several "extremely serious" adverse factors (*id.*). It referred to Akrap's convictions for delivery of cocaine[9] and commented on his "lack of candor" in discussing those convictions and his attempt to minimize his participation and culpability (R. 180–81). It concluded that such lack of candor "deprived the immigration judge and this Board of a full and fair determination whether a favorable exercise of discretion is warranted in this case" and found that Akrap had "not accepted responsibility for his criminal conduct notwithstanding his expression of remorse at the hearing." Finally, BIA pointed out that Akrap is fluent in Serbo–Croatian (having received his primary education in Yugoslavia), that Ranka is also Yugoslavian and that Akrap, Ranka and their children are in good health, all of which BIA determined would reduce the hardship of Akrap's being deported to Yugoslavia (R. 181).

Both that process and the result reached by BIA fit the mold fashioned by such cases as *Vergara–Molina* precisely. BIA

only five. But there is certainly no reason to view that marginal error as having been outcome-determinative for BIA, or as a ground to overturn its decision.

considered the relevant factors, determined that the adverse factors outweighed the equities in Akrap's favor and provided a rational explanation for its decision. Its decision did not rest on any impermissible basis and was in accord with BIA's established policies as well as with our own precedents that have affirmed BIA decisions employing the *Marin* balancing approach (see, e.g., *Vergara–Molina,* 956 F.2d at 684–85; *Chavez–Arreaga v. INS,* 952 F.2d 952 (7th Cir.1991) (per curiam); and *Cordoba–Chaves,* 946 F.2d at 1247–49). As we have previously recognized, "[t]he *norm* under the statute is deportation after a drug offense" (*Chavez–Arreaga,* 952 F.2d at 953 (emphasis in original)). BIA did not exercise its discretion in an arbitrary or capricious manner. It cannot be said to have abused that discretion.

### Conclusion

We lack jurisdiction to review either BIA's August 5 order denying a stay of deportation or its September 10 denial of Akrap's motion to reopen. And as for the only order over which we do have review jurisdiction—BIA's July 2 order—BIA did not abuse its discretion in denying Akrap's request for a Section 212(c) waiver. BIA's decision must therefore be affirmed. Akrap's petition for review is DISMISSED.