**Marvin STONE, Petitioner,**

v.

**IMMIGRATION and NATURALIZATION SERVICE, Respondent.**

No. 93–3163.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 18, 1993.

Decided Jan. 6, 1994.

DAVID A. NELSON, Circuit Judge.

Marvin Stone, the petitioner in this matter, seeks review of a deportation order that became final more than a year and a half before the petition for review was filed in this court. Under § 106(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a)(1), a petition for review must be filed within 90 days after the date of the final order. The threshold question that we must answer is whether the filing of a motion for reconsideration within the 90–day period stopped the § 106(a)(1) clock from running.

Mr. Stone's deportation order became final in July of 1991. Stone promptly filed a motion asking the Board of Immigration Appeals to reconsider the order, but he did not file a petition for review in this court until March of 1993, after the motion for reconsideration had been denied. We believe that a 1990 amendment to the Immigration and Nationality Act compels the conclusion that a motion to reconsider does not toll the time for seeking judicial review. Mr. Stone's petition was thus untimely insofar as it dealt with the 1991 order.

While we have no jurisdiction to review the underlying deportation order, we do have jurisdiction to determine whether the Board abused its discretion in denying the petitioner's motion to reconsider the order. Finding no abuse of discretion, we shall deny relief.

I

Petitioner Stone, a businessman and sometime lawyer, is a life-long citizen of Canada. A frequent visitor to the United States prior to 1977,[1] he says that he has resided here continuously since that time—"but not with legal immigration documentation," as he puts it.

On January 3, 1983, Mr. Stone was convicted in a United States District Court on mail fraud charges. His conviction was affirmed on appeal, and he served approximately 18

Marvin Stone (briefed), pro se.

Robert Kendall, Jr., Lisa Dornell (briefed), U.S. Dept. of Justice, Immigration Litigation, Civ. Div., Washington, DC, Barbara L. Beran, Office of the U.S. Atty., Columbus, OH, for respondent.

Before: NELSON and BATCHELDER, Circuit Judges; and MATIA, District Judge.*

---

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The Immigration and Naturalization Service apparently sought to exclude Mr. Stone from this country in 1975 because of criminal fraud charges pending against him in Canada. We gather that an immigration hearing officer held that Mr. Stone could not be barred from entering the United States as a visitor.

months of a three-year sentence at a federal correctional institution.

The Immigration and Naturalization Service instituted deportation proceedings against Mr. Stone subsequent to his release from prison. In January of 1988, at the conclusion of a series of hearings before an immigration judge, a deportation order was issued against Mr. Stone on the ground that he had remained in the United States for a longer time than permitted. (Under 8 C.F.R. § 214.2(b), as in effect in 1977, the initial stay in this country of a nonimmigrant business visitor was not supposed to exceed six months; the regulations authorized the granting of extensions in six-month increments, but Mr. Stone testified that he was unaware of the need to apply for an extension. Mr. Stone has remained in the United States for some years now without written authorization.)

The immigration judge also denied an application for suspension of deportation pursuant to § 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a), which grants authority to suspend deportation of an alien who has been physically present in the United States for at least seven years, who has been of good moral character during that time, and whose deportation would work extreme hardship on him or his family. Because Mr. Stone had been confined to a penal institution for more than 180 days within the seven-year period, the immigration judge concluded, a finding of good moral character was foreclosed by 8 U.S.C. § 1101(f)(7). That section provides, in pertinent part, that "[n]o person shall be regarded as, or found to be, a person of good moral character who ... has been confined, as a result of a conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been convicted were committed within or without such [seven-year] period."

Mr. Stone appealed the immigration judge's order to the Board of Immigration Appeals. In a decision dated July 26, 1991,

the Board dismissed the appeal. The order of deportation became final on that date under 8 C.F.R. § 243.1, which provides that "an order of deportation ... shall become final upon dismissal of an appeal by the Board...."

In August of 1991, proceeding *pro se*,[2] Mr. Stone filed with the Board a pleading styled "Motion to Reopen and/or to Reconsider its Decision; Appeal to the Board of Immigration Appeals." The motion did not set forth any "new facts to be proved at [a] reopened hearing," as would have been required for a motion to reopen, and the Board treated the document as solely a motion to reconsider. Neither type of motion could have served to stay the deportation order. See 8 C.F.R. § 3.8, which so provides.

In a short decision dated February 3, 1993, the Board denied the reconsideration motion as frivolous. Mr. Stone filed his petition for review in this court on March 25, 1993.

II

■ With the enactment in 1961 of the Immigration and Nationality Act, Pub.L. 87–301, 75 Stat. 650, Congress effected a major overhaul of this country's immigration laws. One of the objects of the 1961 legislation was to streamline judicial review of deportation orders. In a section codified at 8 U.S.C. § 1105a, the Act denied the district courts any role in the review process; subject to stated modifications, the procedure for direct review by the courts of appeals (a procedure prescribed by what is now Chapter 158 of Title 28) was made "the sole and exclusive procedure" for obtaining judicial review of final orders of deportation. 8 U.S.C. § 1105a(a). The "fundamental purpose" of § 1105a was "to abbreviate the process of judicial review ... in order to frustrate certain practices ... whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts." *Foti v. I.N.S.*, 375 U.S. 217, 224, 84 S.Ct. 306, 311, 11 L.Ed.2d 281 (1963).

---

**2.** Mr. Stone was represented by counsel at the outset of the hearings before the immigration judge, but the attorney did not appear at the final hearing; Mr. Stone has represented himself ever since.

Under § 1105a(a)(1), as originally enacted, persons against whom deportation orders were issued were given up to six months within which to seek appellate court review. In the Immigration Act of 1990, Pub.L. 101–649, 104 Stat. 4978, however, that period was reduced to 90 days for aliens who had not been convicted of aggravated felonies. In the case of an alien convicted of an aggravated felony, the filing period was cut to 30 days. 8 U.S.C. § 1105a(a)(1), as amended by Pub.L. 101–649, § 502(a).

Prior to 1990 a split of authority had developed among the circuits as to whether the filing of a motion to reopen or reconsider a final order of deportation operated to extend the time for seeking judicial review. In an opinion issued in 1986, *Nocon v. I.N.S.,* 789 F.2d 1028, 1033 (3rd Cir.1986), the Court of Appeals for the Third Circuit rejected the contention that the filing of a motion to reopen or reconsider a final deportation order suspends the statutory time limit on seeking judicial review. "[T]o hold otherwise," the court said, "would defeat the purpose of [a] statute [that] ... was designed to prevent undue delay in deportation once the alien's immigration status had been decided." *Id.* (internal quotations and citation omitted).[3] The court acknowledged that its approach was at odds with the approach of other courts of appeals, *id.* at 1031, citing *Bregman v. I.N.S.,* 351 F.2d 401 (9th Cir.1965), and *Hyun Joon Chung v. I.N.S.,* 720 F.2d 1471 (9th Cir.), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 366 (1984),[4] but the Third Circuit declined to accept the rationale of those cases.

The Ninth Circuit's rationale reflects that court's understanding of the logic implicit in *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), a one-sentence per curiam opinion in which the Supreme Court reversed a Ninth Circuit decision reported at 308 F.2d 347 (1962). A deportation order against Mr. Giova had become final on September 15, 1957. Mr. Giova moved to reopen the proceedings before the Board of Immigration Appeals, and his motion was denied on November 3, 1961. He then sought judicial review of the denial of the motion to reopen, but did not appeal from the underlying order of deportation. The Court of Appeals dismissed the matter for want of jurisdiction, but the Supreme Court reversed the dismissal and remanded the case with directions to entertain the petition for review.

It is clear that Mr. Giova's petition for review dealt only with the denial of his motion to reopen and not with the deportation order itself. See 308 F.2d at 348. In *Bregman,* 351 F.2d 401, however, the Ninth Circuit reasoned that the Supreme Court had interpreted the reference in § 1105a(a) to "all final orders of deportation" as including denials of motions to reopen. It followed from this, in the Ninth Circuit's view, "that if the motion to reopen before the Board is within six months of the final order of deportation and the petition to this court is within six months of the denial of the motion ... this court has jurisdiction to review both the final order of deportation and the denial of the motion to reopen." *Id.* at 402. In other words, as the Ninth Circuit suggested in a subsequent opinion, "Congress visualized a single administrative proceeding in which all questions relating to an alien's deportation would be raised and resolved, followed by a single petition in a court of appeals for judicial review...." *Yamada v. I.N.S.,* 384 F.2d 214, 218 (9th Cir.1967). Support for this view—which is consistent with the argument that the Solicitor General presented to the Supreme Court in *Giova*—was said to be found in the concern expressed by a congressional committee over the fact that "[s]ucces-

---

**3.** The conclusion that a motion to reopen or reconsider does not preclude the filing of a petition to review the final deportation order is supported, as the Third Circuit noted, by the fact that the regulation governing such motions "appears to assume the continuing appealability of the original deportation order...." *Nocon,* 789 F.2d at 1033 n. 5, citing 8 C.F.R. § 3.8(a) ("Motions to reopen or reconsider shall state whether the validity of the deportation order has been or

is the subject of any judicial proceeding and, if so, the nature and date thereof, the court in which such proceeding took place or is pending, and its result or status").

**4.** See also *Attoh v. I.N.S.,* 606 F.2d 1273 (D.C.Cir.1979); *Pierre v. I.N.S.,* 932 F.2d 418 (5th Cir.1991); and *Fleary v. I.N.S.,* 950 F.2d 711 (11th Cir.1992), all of which stem from the Ninth Circuit's decision in *Bregman.*

sive, piecemeal appeals had been used as a dilatory tactic to postpone the execution of deportation orders." *Hyun Joon Chung,* 720 F.2d at 1474 (citing H.R. No. 1086, 87th Cong., 1st Sess., reprinted in 1961 U.S.Code Cong. & Admin.News 2950, 2967).

It is true that Congress was concerned about dilatory tactics, but given the way in which the system works in practice the Ninth Circuit approach seems more conducive to dilatory tactics than does the Third Circuit approach. Under the Ninth Circuit's *Bregman* decision and its progeny, an alien against whom a final deportation order has been entered can file a reconsideration motion, meritorious or not, and simply wait for however long it takes for the authorities to commence execution of the deportation order or for the Board to decide the motion for reconsideration. Normally, when one of those events finally occurs, the alien can then obtain a stay of the deportation order by filing a petition for judicial review. (A motion to reopen or reconsider does not stay deportation, as we have seen, but the filing of a petition for review automatically stays deportation pending determination of the petition by the court unless the court directs otherwise. See 8 U.S.C. § 1105a(a)(3).) Given the measured pace at which the I.N.S. often operates, the filing of a motion for reconsideration may, under the Ninth Circuit approach, mean that the day of judgment in the court of appeals—and actual deportation—will not arrive until months or years later than would otherwise have been the case. (It is not without significance, in this connection, that it took the Board of Immigration Appeals more than 17 months to reject as frivolous the motion for reconsideration filed here by petitioner Stone.)

Whatever the law may have been previously, we do not believe that the Ninth Circuit approach is consistent with the statute as amended in 1990. In addition to cutting in half the time for filing a petition for review, the 1990 legislation amended 8 U.S.C. § 1105a(a) by adding the following subsection:

"(6) Whenever a petitioner seeks review of [a final order of deportation] under this section, any review sought with respect to a motion to reopen or reconsider such an order shall be consolidated with the review of the order." Pub.L. No. 101–649, § 545(b)(3), 104 Stat. 4978, 5065 (1990). This provision for consolidating review of the final deportation order with review of the Board's disposition of a motion to reopen or reconsider would make no sense at all unless separate petitions for review could be filed. If Congress had intended to provide for a single petition for review covering both the original deportation order and the subsequent denial of a motion for reconsideration, there would not be two review proceedings to consolidate.

Arguing against the conclusion that the Ninth Circuit approach should no longer be followed is *Fleary v. I.N.S.* (n. 4, *supra*), where the Eleventh Circuit decided—based in part on the absence of any legislative history contrary to this conclusion—that the 1990 legislation "follows the contours of the Ninth Circuit decisions." 950 F.2d at 713. Subsequent to *Fleary,* however, the Court of Appeals for the Seventh Circuit declared that the 1990 enactment of 8 U.S.C. § 1105a(a)(6) "has put to rest" the conflict that previously existed between cases such as *Nocon* in the Third Circuit and *Hyun Joon Chung* in the Ninth Circuit. See *Akrap v. I.N.S.,* 966 F.2d 267, 271 (7th Cir.1992). The logic of the Seventh Circuit's *Akrap* decision strikes us as irrefutable:

"By its own terms [§ 1105a(a)(6) ] refers to the consolidation of two reviews (and not to the 'consolidation' of BIA 'orders' as *Fleary,* 950 F.2d at 713 suggests). If the filing of a motion to reopen were to render any previous orders non-final, only one final order would exist—and what then would be subject to 'consolidation' even in the *Fleary* view?

In short, any such rule as *Fleary* prescribes would also be incompatible with the plain language of [§ 1105a(a)(6) ]. We hold that BIA's ... deportation order was a final order when issued, and it remained a final order notwithstanding Akrap's motion to reopen." *Id.*

Applying the logic of *Nocon* and *Akrap* here, we conclude that the deportation order of July 26, 1991, was a final order when

STONE v. I.N.S. 939

issued. The order remained a final order notwithstanding Mr. Stone's subsequent filing of a motion for reconsideration—and the petition for judicial review filed in 1993 came too late to give us jurisdiction with respect to the 1991 deportation order.

In reaching this conclusion we are mindful of the Supreme Court's admonition in *Cheng Fan Kwok v. I.N.S.*, 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968):

"Section 106(a) [8 U.S.C. § 1105a(a)] is intended exclusively to prescribe and regulate a portion of the jurisdiction of the federal courts. As a jurisdictional statute, it must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes."

### III

Contending that government employees gave him erroneous advice on the procedure to be followed in obtaining review of the deportation order, Mr. Stone suggests that we should find the I.N.S. estopped to raise the jurisdictional issue. The suggestion is not well taken.

In general, equitable estoppel may be invoked against the government in deportation proceedings only where the government has been guilty of "affirmative misconduct." *Bolourchian v. I.N.S.*, 751 F.2d 979, 980 (9th Cir.1984). No affirmative misconduct is alleged in the instant case; the most that can be said is that Mr. Stone (who was trained as a lawyer himself) may have been given imperfect legal advice on an area of the law that can fairly be said to have been unsettled.

Even if the government were precluded from raising the jurisdictional issue, moreover, we would have an obligation to do so ourselves—and except as specifically authorized by law, we are prohibited by Rule 26(b), Fed.R.App.P., from enlarging the time prescribed by law for filing a petition for review. Nothing in the law authorizes us to enlarge the 90-day period established in 8 U.S.C. § 1105a(a)(1).

### IV

Although the 1990 amendment is inconsistent with the conclusion previously reached by the Ninth Circuit in *Bregman* and its offspring, § 1105a(a)(6) does reflect a congressional understanding that petitions for review may be filed with respect to rulings on motions to reopen or reconsider. The narrow holding of *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, thus survived the 1990 legislation, even though *Giova*'s broader implications did not; we clearly have jurisdiction, as the I.N.S. acknowledges, to review the order in which the Board denied Mr. Stone's motion to reconsider. (The petition for review was filed, as the reader may remember, within 90 days after the date on which the motion was denied. Not counting the time during which the motion for reconsideration was pending, moreover, the time that elapsed between the issuance of the 1991 deportation order and the 1993 denial of the motion for reconsideration did not exceed 90 days.)

Our standard of review is one of abuse of discretion—see *Dawood-Haio v. I.N.S.*, 800 F.2d 90, 95 (6th Cir.1986)—and we are satisfied that the Board did not abuse its discretion in denying Mr. Stone's motion for reconsideration. The caselaw cited in the motion did not support the conclusion that Mr. Stone should be permitted to remain in the United States, and we fully agree with the Board's characterization of the motion as "frivolous."

Insofar as the petition for review applies to the final order of deportation, the petition is **DISMISSED FOR WANT OF JURISDICTION**; insofar as it applies to the denial of the motion for reconsideration, the petition is **DENIED**.