## MATTER OF MARIN

### In Deportation Proceedings

### A–13923847

*Decided by Board August 4, 1978*

(1) An application for discretionary relief under section 212(c) of the Act necessitates a balancing of the adverse factors of record evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of relief is in the best interest of this country.

(2) A statutorily eligible applicant who has the right to apply for relief under section 212(c) must be given the reasonable opportunity to come forward with favorable considerations which may offset the adverse matters of record.

(3) The equities that an applicant for relief under section 212(c) must bring forward to establish that favorable discretionary action is warranted will depend in each case on the nature and circumstances of the ground of exclusion sought waived and on the presence of any additional adverse factors (factors previously deemed favorable and unfavorable set forth).

(4) An applicant for discretionary relief under section 212(c) who has been convicted of a serious drug offense must demonstrate "unusual" or "outstanding" countervailing equities before a favorable exercise of discretion will be considered.

(5) An applicant for relief under section 212(c) who has a criminal record will ordinarily be required to make a showing of rehabilitation before relief will be granted as a matter of discretion.

(6) There is no irrebuttable presumption that a confined or recently convicted alien can never establish either that rehabilitation has occurred or that relief under section 212(c) should otherwise be granted.

(7) The recency of a conviction and the fact of confinement are matters relevant to the consideration of whether an alien has demonstrated his rehabilitation and whether relief should be granted as a matter of discretion.

(8) A District Director is not required to withhold the issuance of an Order to Show Cause in the case of a confined or recently convicted alien who is statutorily eligible for relief under section 212(c) in order to provide the alien a better opportunity to demonstrate his rehabilitation.

(9) The decision to institute deportation proceedings is vested in the discretion of the District Director and the Board of Immigration Appeals is not the proper forum in which to seek a review of the rationale underlying a District Director's decision in this regard.

CHARGE:

Order: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251(a)(11)]—Conviction of narcotics charge

ON BEHALF OF RESPONDENT:
Willard H. Myers, III, Esquire
Prisoners' Legal Services of New York
315 Lake Street
Elmira, New York 14901

ON BEHALF OF SERVICE:
George W. Masterton
Appellate Trial Attorney

BY: Milhollan, Chairman; Appleman, Maguire, and Farb, Board Members

In a decision dated August 23, 1977, the immigration judge found the respondent deportable as charged, denied his application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. 1182(c), and ordered his deportation to Colombia. The respondent has appealed. The appeal will be dismissed.

The respondent, a 46-year-old native and citizen of Colombia, was admitted to the United States for lawful permanent residence on February 3, 1965. In March 1976, he entered a guilty plea in a New York State criminal court to the felony charge of criminal sale of cocaine. On April 29, 1976, he was sentenced to the minimum mandatory sentence provided under New York law for that offense, an indeterminate sentence of one year to life. Including credited pretrail confinement, the respondent served some 30 months of this sentence (from November 1975 through May 1978) in New York State penal institutions.

On May 11, 1977, while still confined, an Order to Show Cause was issued charging the respondent with being deportable under section 241(a)(11) of the Act, 8 U.S.C. 1251(a)(11), as an alien convicted of a designated drug offense. At the hearing held on July 20, 1977, the respondent conceded deportability. The immigration judge accordingly found him deportable as charged and that finding is not in issue on appeal.

At the deportation hearing, the respondent applied for relief under section 212(c) of the Act. That section provides, in pertinent part, that aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds for exclusion enumerated in section 212(a) of the Act. The grounds specified include an alien who has been convicted of a drug offense, as set forth in section 212(a)(23) of the Act, 8 U.S.C. 1182(a)(23). In light of our decision in *Matter of Silva*, Interim Decision 2532 (BIA 1976), the immigration judge properly concluded that the respondent was statutorily eligible for relief from deportation under section 212(c) even though he had not proceeded abroad subsequent to his entry for lawful permanent residence. See *Francis v. INS*, 532 F.2d 268 (2 Cir. 1976).

Section 212(c), however, does not provide an indiscriminate waiver

for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an applicant warrants the relief sought. The alien bears the burden of demonstrating that his application merits favorable consideration.

In the case before us, the immigration judge concluded that the respondent had failed to establish that "a waiver of deportability [was] merited as a matter of discretion." [1] In this regard, he noted the nature of the respondent's criminal offense and subsequent confinement and concluded that a waiver should not be granted absent a showing of "unusual or outstanding equities." Other than his residence in the United States for 12 years, however, the respondent was "unable to advance any substantial equities." [2] He was single, childless, and had no relatives residing in this country. His closest relatives (a brother and sister) both lived in Colombia. The respondent's employment history was sporadic and he presented no evidence that he would have particular difficulty returning to Colombia other than stating that "life [was] too hard there."

Based on the "entire record," the immigration judge concluded that the respondent's conviction as a drug offender had not been sufficiently offset by his "twelve years of residence in the United States" and "his adjustment to prison life" to warrant the granting of discretionary relief under section 212(c). The application for relief was accordingly denied.

On appeal, the respondent, through counsel, states that the "decision of the immigration judge denying [his section 212(c)] application . . . in the exercise of discretion was neither founded upon standards which have been promulgated through regulation or adjudication, nor did the standards applied rest upon a permissible basis." The respondent submits that a wealth of precendential standards exist regarding the discretionary granting of section 212(c) relief, that the immigration judge made a "radical departure from the precedent decisions of this Board [by instead] employing the standards of *Matter of Fernandez, supra*, and *Matter of Arai, supra*," that he did so without citation or comment on the existing precedent decisions, that this departure "violated any standard for fair play, as well as due process," and that the factors actually relied upon by the immigration judge were impermissible.

---

[1] The immigration judge cited *Matter of Fernández*, 14 I. & N. Dec. 24 (BIA 1972) (involving a section 212(h) waiver) as permitting him to refuse to entertain the section 212(c) application because the respondent was still in prison, but he in fact accepted the application and allowed the respondent the full opportunity to present evidence in support of a favorable exercise of discretion.

[2] The immigration judge noted the factors deemed favorable in our decision in *Matter of Arai*, 13 I. & N. Dec. 494 (BIA 1970) (involving adjustment of status under section 245 of the Act) and examined the record for their presence.

We find no merit to this basis of appeal. The Board has not adopted an inflexible test for an immigration judge to use to determine as a conclusory matter whether section 212(c) relief should be granted as a matter of discretion. The undesirability and "difficulty, if not impossibility, of defining any standard in discretionary matters of this character which may be applied in a stereotyped manner" has long been recognized. See *Matter of L—*, 3 I. & N. Dec. 767 (BIA 1949; A.G. 1949) (involving the seventh proviso to section 3 of the Act of 1917). Instead, it has been held that each case must be judged on its own merits. The immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.

In order to provide the framework for an equitable application of discretionary relief, the Board has enunciated factors relevant to the issue of whether section 212(c) relief should be granted as a matter of discretion. Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. See, for example, *Matter of Carrasco*, Interim Decision 2579 (BIA 1977), aff'd on other grounds, *Carrasco-Favela* v. *INS*, 563 F.2d 1220 (5 Cir. 1977); *Matter of Edwards*, 10 I. & N. Dec. 506 (BIA 1963, 1964); *Matter of M—*, 3 I. & N. Dec. 804 (BIA 1949) (involving the seventh proviso to section 3 of the Immigration Act of 1917); *Matter of V—*, 1 I. & N. Dec. 293 (BIA 1942) (seventh proviso); *Matter of G—*, 1 I. & N. Dec. 8 (BIA 1940; A.G. 1940) (seventh proviso).

Although in an individual case, one or more of these adverse factors may ultimately be determinative of whether section 212(c) relief is in fact granted, their presence does not preclude a respondent from presenting evidence in support of a favorable exercise of discretion. See *Vissian* v. *INS*, 548 F.2d 325, 330 (10 Cir. 1977).[3] Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particu-

---

[3] *Matter of Fernandez, supra*, which involved an application for section 212(h) relief filed by an incarcerated applicant in exclusion proceedings, should not be read as permitting an immigration judge to decline to entertain an application for relief under section 212(c) by a statutorily eligible respondent merely because he is held in confinement. A respondent with the right to apply for such relief must be given the reasonable opportunity to meet his burden of establishing that relief should be granted as a matter of discretion. See *Matter of M—*, 7 I. & N. Dec. 368 (BIA 1956).

larly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives). See *Matter of Edwards, supra; Matter of G—A—,* 7 I. & N. Dec. 274 (BIA 1956); *Matter of F—,* 6 I. & N. Dec. 537 (BIA 1955); *Matter of S—,* 6 I. & N. Dec. 392 (BIA 1954; A.G. 1955); *Matter of M—,* 5 I. & N. Dec. 598 (BIA 1954); *Matter of G—Y—G—,* 4 I. & N. Dec. 211 (BIA 1950; Act'g A.G. 1951) (seventh proviso); *Matter of M—,* 3 I. & N. Dec. 804 (BIA 1949) (seventh proviso); *Matter of V—I—,* 3 I. & N. Dec. 571 (BIA 1949) (seventh proviso); *Matter of L—, supra; Matter of V—,* supra; *Matter of G—,* supra.

Upon review of the record as a whole, the immigration judge is required to balance the positive and adverse matters to determine whether discretion should be favorably exercised. The basis for the immigration judge's decision must be enunciated in his opinion. In some cases, the minimum equities inherent in eligibility for section 212(c) relief (i.e., residence of at least seven years and status as a lawful permanent resident) may be sufficient in and of themselves to warrant favorable discretionary action. No general standard has been adopted that applications for such relief should ordinarily be granted in the absence of unfavorable factors, however, as an application for section 212(c) relief of necessity carries with it at least one adverse consideration (the ground of exclusion sought waived). Compare *Matter of Arai, supra* (involving standards for discretionary review of application for adjustment of status under section 245 of the Act). See also *Matter of Blas,* Interim Decision 2485 (BIA 1974; A.G. 1976).

The equities that an applicant for section 212(c) relief must bring forward to establish that favorable discretionary action is warranted will depend in each case on the nature and circumstances of the ground of exclusion sought waived and on the presence of any additional adverse matters. As the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. Such a showing at times may be required solely by virtue of the circumstances and nature of the exclusion ground sought waived.

The standards provided in this area have of necessity been general in nature. The framework for the desired equitable availability of discretionary relief under section 212(c), however, is furnished by the enunciation of factors deemed relevant to the decision-making process, the

requirement that the immigration judge specify the basis for any discretionary decision reached, and the presence of this Board to review any such decision on appeal.

It is within this context that the respondent submits that the immigration judge when exercising his discretion made a "radical departure" from the precedent decisions of the Board. We find no such departure, "radical" or otherwise. The immigration judge reviewed the record as a whole after providing the respondent the complete opportunity to introduce offsetting equitable matters in his behalf. Based on the nature of the adverse matters of record, the immigration judge concluded that favorable discretionary action should be withheld absent a showing of "unusual" or "outstanding" equities. *Matter of Arai, supra,* was cited in this regard. We agree that such a requirement was proper in view of both the nature of the criminal offense at issue here [4], its recency, and the significant period (some 30 months) for which the respondent was confined.

The respondent objects to the immigration judge's citation to *Matter of Arai, supra.* As a general rule it is prudent to avoid cross-application, as between different types of relief from deportation, of particular principles or standards for the exercise of discretion. In the present case, however, the reference to *Arai* concerned only the general approach stated there (i.e., the balancing of favorable and unfavorable factors within the context of the relief sought). This may be applied to any case involving the exercise of discretion.

Appellate counsel states that the *Arai* standards require a showing of "unusual" or "outstanding" equities in every section 245 case in which adverse factors appear. An adverse matter will be present in every section 212(c) application. It is, therefore, submitted that if the *Arai* standards are adopted in section 212(c) cases, the existence of the single unfavorable matter inherent in such cases would improperly become the "trigger for a showing by the applicant of a higher order of equities . . . ." This requirement, it is argued, would be "inconsistent with the ameliorative purpose of the statute."

The problem with this analysis, however, lies in a mistaken reading of *Matter of Arai, supra.* The decision in *Arai* did not mandate a showing of extraordinary equities in every case in which adverse matters appear. It merely indicated that dependent upon the nature of the adverse

---

[4] Clear distinctions arise in the Act in the treatment of aliens convicted of drug offenses and those convicted of other crimes. Compare sections 241(a)(4) and 241(a)(11). Also see section 241(b); *Guan Chow Tok v. INS,* 538 F.2d 36 (2 Cir. 1976); *Oliver v. INS,* 517 F.2d 426 (2 Cir. 1975). In view of this disparate statutory treatment and the disfavor with which we view such offenses, we require a showing of unusual or outstanding countervailing equities by applicants for discretionary relief who have been convicted of serious drug offenses, particularly those involving the trafficking or sale of drugs.

matters of record, such a showing might be required. This is equally true in the context of a section 212(c) application. The immigration judge was not mistaken in this regard as he clearly based his requirement for a showing of "unusual" or "outstanding" countervailing equities on the *nature* of the unfavorable matters in the record before him, rather than on the mere fact that adverse factors were present. We, therefore, find no error in the immigration judge's reference to *Matter of Arai, supra.*

We further agree that the equities presented by respondent did not sufficiently offset the adverse matters of record. The respondent states that the factors deemed relevant by the immigration judge were in large part impermissible. In this regard, it is submitted that the immigration judge improperly deemed the respondent's absence of close family ties to this country to be an "adverse" matter.

A respondent, however, bears the burden of demonstrating that discretionary relief should be exercised in his behalf. Thus, while the absence of a particular favorable matter (e.g., close family ties) is not an "adverse" factor, it will of necessity make it more difficult for a respondent to successfully establish that he warrants the relief sought. Here, it is clear from the immigration judge's decision that he did not treat the respondent's familial status as a negative factor requiring a showing of countervailing equities. He merely noted the absence of family ties in the context of the respondent's failure to show sufficient equities to offset the specified adverse matters.

We find no merit to the challenge to the other considerations cited by the immigration judge in reaching his decision on the exercise of discretion (e.g., the presence of a brother and sister in Colombia; the absence of a showing of unusual "hardships" if deported) for the same reasons noted above. Each factor cited was relevant to the issue of whether discretion should be favorably exercised, and each was considered by the immigration judge in the context of finding that the respondent had failed to come forward with sufficient equities to offset the significant unfavorable evidence.

As an additional, but related, basis of appeal, the respondent submits that new standards must be adopted with specific regard to the treatment of applications for section 212(c) relief filed by imprisoned aliens. It is stated that the Board has required applicants with a criminal record to demonstrate a "positive rehabilitation" before discretionary relief will be granted. The respondent submits that we have tied this showing of rehabilitation exclusively to time-based factors (i.e., the recency of the offense or fact of present confinement). The result, it is argued, is that a District Director by merely electing to issue an Order to Show Cause while an alien is confined can effectively preclude any successful application by that respondent for section 212(c) relief. This

leads the respondent to the "inescapable conclusion" that under the Board's present standards the prosecution of incarcerated aliens is "selective," "impermissible," and clearly at variance with the due process and equal protection clauses of the United States Constitution. It is urged that the remedy to this perceived constitutional defect is either for the Board to adopt revised standards which would permit an incarcerated alien to demonstrate his "entitlement to relief without regard to the fact that he is currently confined" and without use of a "time-based measure . . . of reformation" or for the Board to "forbid the commencement of proceedings altogether [against incarcerated aliens] until [they have] been permitted a sufficient period [to demonstrate their] reformation."

We find no merit to this ground of appeal. It is true that applicants for section 212(c) relief who have criminal records will ordinarily be required to make a showing of rehabilitation. It is also true that this Board has found both the fact of confinement and the recency of the offense to be relevant to the question of whether rehabilitation has been established. However, although those factors may ultimately in given cases be determinative of the issue, we have never adopted a "conclusive" time-based standard of reformation that creates an irrebuttable presumption that a confined alien can never establish either that he is rehabilitated or that relief should otherwise be granted.[5]

Confined aliens and those who have recently committed criminal acts will have a more difficult task in showing that discretionary relief should be exercised in their behalf than aliens who have committed the same offenses in the more distant past. Dependent upon the nature of the offense and the circumstances of confinement, it may well be that a confined respondent will not be able to demonstrate rehabilitation. This does not mean, however, that different and constitutionally defective standards are applied to aliens, depending on whether they are recent criminals, in confinement, or released ex-offenders. The same test for the exercise of discretion is applied to each category of aliens. It is the factual circumstances that the alien finds himself in as a result of his own misconduct that results in the varying difficulty for successful application for discretionary relief. This fact does not mandate that standards be adopted which ignore considerations clearly relevant to the issue of

---

[5] The cases cited by respondent in this regard, with one exception, merely found that the passage of time without further criminal activity was indicative of rehabilitation. See, for example, *Matter of G—A—, supra; Matter of S—, supra.* In *Matter of Carrasco, supra,* we found simply that on the facts there before us discretionary relief was appropriately denied the respondent in view of the recency of his conviction and the nature of his crime (importing 26 pounds of marihuana). None of the cases cited held that confined or recently convicted aliens could never establish that discretionary relief under section 212(c) was warranted.

rehabilitation and the exercise of discretion. Nor does it compel a District Director to withhold instituting proceedings in cases where an alien is either recently convicted or still confined in order to give the alien a better opportunity to demonstrate his rehabilitation. See section 242(h) of the Act, 8 U.S.C. 1252(h).

In any case involving discretionary relief, the timing of the issuance of the Order to Show Cause can have a significant effect on either statutory eligibility for the relief sought or on the circumstances relevant to the exercise of discretion. That fact alone, however, does not render a District Director's decision to institute proceedings suspect. The respondent cites *Lennon v. United States*, 387 F. Supp. 561 (S.D. N.Y. 1975) (involving an allegation that deportation proceedings were instituted against an alien solely because of his lawful exercise of constitutional rights). We find no allegation or evidence, however, of an abuse of discretion of the nature at issue in *Lennon*.[6]

We finally note in this regard that the decision to institute deportation proceedings is vested in the discretion of the District Director. 8 C.F.R. 242.1(a). This Board is an administrative body of limited jurisdiction and is not the proper forum in which to seek review of the rationale underlying a District Director's decision to issue an Order to Show Cause. *Matter of Lennon*, Interim Decision 2304 (BIA 1974), rev'd on other grounds, *Lennon v. INS*, 527 F.2d 187 (2 Cir. 1975); *Matter of Geronimo*, 13 I. & N. Dec. 680 (BIA 1971).

Upon review of the record, we conclude that the immigration judge's decision is supported by both law and fact. We find no merit to the arguments advanced on appeal by the respondent. The appeal will accordingly be dismissed.

ORDER: The appeal is dismissed.

---

[6] The respondent notes that the New York and Buffalo districts of the Service and the New York State Department of Correctional Services (D.O.C.S.) have entered into an agreement by which each will cooperate to locate the expeditiously determine the immigration status of aliens incarcerated in the New York State Correctional System. Respondent concedes that the agreement not only is of benefit to the Service and the D.O.C.S., but also is of benefit in several ways to the alien. We find nothing arising from this agreement that either indicates or implies a District Director's abdication of discretion or abuse thereof.