983 F.2d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anna Altagracia RODRIGUEZ-REYES, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-3305.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1993.
 
 Before MERRITT, Chief Judge, and RALPH B. GUY, Jr. and RYAN, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Petitioner seeks review of the Board of Immigration Appeals' decision affirming the immigration judge's decision denying her petition for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act. 8 U.S.C. § 1182(c). Upon review, we find no abuse of discretion by the Board in denying the requested waiver, and therefore we affirm.
 
 I.
 
 2
 Rodriguez-Reyes, a 61-year old citizen of the Dominican Republic, lawfully entered this country as a permanent resident alien in 1974. Upon entering the country, she moved to New York City to live with her son and his children. In New York, she worked at various jobs and attended church regularly. She was an active member of the community, assisting the elderly to attend church services. In addition to helping raise her own grandchildren, Rodriguez-Reyes provided a home for an unwed teenage mother whose own mother had died and was unwelcome in her own father's home. The child born to that woman, named Angelica, was raised by Rodriguez-Reyes as her own child.
 
 
 3
 On several occasions, Rodriguez-Reyes returned to the Dominican Republic to visit family. On one of these visits, petitioner became ill, was granted permission to stay for one year, and then given an extension for another year. On one visit to the Dominican Republic, she took a job working for a local bus company. In addition to her three children and Angelica, currently living in her homeland, she has one son and five grandchildren who now live in Florida.
 
 
 4
 In 1988, returning from one of her trips to the Dominican Republic, petitioner was detained by customs officials in Puerto Rico. When asked if she was concealing anything, Rodriguez-Reyes freely volunteered that she was carrying four packets of medicine that a neighbor requested she take to a friend in Puerto Rico. The packets were tested and determined to contain cocaine. While petitioner maintains that she had no idea she was transporting illegal substances, she pled guilty to a violation of 21 U.S.C. § 952(a) by importing cocaine into the customs territory of the United States. She received a sentence of five years' imprisonment and four years of supervised release.
 
 
 5
 In April 1991, the INS charged Rodriguez-Reyes with deportability pursuant to 8 U.S.C. § 1251(a)(2)(B)(i) for having been convicted of a violation of law relating to a controlled substance. Petitioner conceded deportability, but applied for a waiver of deportation under section 212(c) of the Immigration and Nationality Act. 8 U.S.C. § 1182(c). After a hearing at which petitioner testified, an immigration judge denied her section 212(c) application. In March 1992, the Board of Immigration Appeals dismissed petitioner's appeal.
 
 
 6
 A summary of her medical records from the federal correctional institution where she was incarcerated indicate that she has a history of hypertension, shoulder pains and painful varicose veins. The summary also indicates that she was found to have tendinitis of the shoulder and gallstones. In April 1992, one month after the Board rendered its decision, petitioner underwent open heart surgery, requiring a triple by-pass.
 
 II.
 ANALYSIS
 A. The Standard of Review
 
 7
 Rodriguez-Reyes has applied for a waiver from deportation pursuant to section 212(c) of the Immigration and Nationality Act. 8 U.S.C. § 1182(c). "The alien bears the burden of demonstrating that [her] application warrants favorable consideration." Blackwood v. INS, 803 F.2d 1165, 1167 (11th Cir.1986).
 
 
 8
 Section 212(c) of the Act provides in part:
 
 
 9
 Aliens lawfully admitted for permanent resident who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [specified grounds for exclusion enumerated in section 212(a) of the Act].
 
 
 10
 8 U.S.C. § 1182(c).[1] The courts have extended this section to allow for relief from deportation even though the alien has not proceeded abroad after the acts which rendered him deportable. See Variamparambil v. INS, 831 F.2d 1362, 1364 n. 1 (7th Cir.1987) (citing Francis v. INS, 532 F.2d 268 (2d Cir.1976)).
 
 
 11
 This court has jurisdiction to review all final orders of deportation. 8 U.S.C. § 1105a(a). In an immigration case, the order is final after the BIA issues its opinion. Vergara-Molina v. INS, 956 F.2d 682, 684 (7th Cir.1992). Thus, we review the decision of the BIA, not the immigration judge. Id. Our standard of review is abuse of discretion. Id.
 
 
 12
 In determining whether the Board abused its discretion, this Court must decide whether the denial of Petitioner's motion to reopen deportation proceedings was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.
 
 
 13
 Balani v. INS, 669 F.2d 1157, 1161 (6th Cir.1982). The same criteria are applied to a BIA decision denying a section 212(c) waiver. See Vergara-Molina, 956 F.2d at 684; McLean v. INS, 901 F.2d 204, 205 (1st Cir.1990).
 
 B. Merits
 
 14
 There is no set formula to apply in these cases. Rather, the Board has adopted a balancing test which weighs the "adverse factors evidencing an alien's undesirability as a permanent resident [against] the social and humane consideration presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interest of this country." Matter of Marin, 16 I. & N. Dec. 581, 584 (BIA 1978). Adverse factors include
 
 
 15
 the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability....
 
 Id. The favorable considerations include
 
 16
 such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives).
 
 
 17
 Id. at 584-85. The Board has recognized that a drug offense, such as the importation of cocaine, is a serious adverse factor weighing heavily against the alien. Id. at 586. In certain circumstances, including when the alien has been convicted of a drug offense, the courts have upheld the requirement that unusual or outstanding equities be demonstrated to even raise the possibility of gaining relief from deportation. Ayala-Chavez v. INS, 944 F.2d 638, 641 (9th Cir.1991). Essentially, the balancing analysis resembles a scale; as the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting social and humane considerations favoring waiver of deportation.
 
 
 18
 In its decision, the Board reviewed all the equities in favor of Rodriguez-Reyes' application for waiver and weighed them against the factor causing her to be classified as deportable--her drug offense conviction. In petitioner's case, the Board considered the following as favorable factors: she has been in the United States for 17 years; she is now 61 years old; she has several family members living in the United States as citizens or lawful permanent residents, including five grandchildren whom she helped raise; her son in Florida has promised to support her and allow her to live with them; as a resident, she always attended church regularly; she helped transport elderly parishioners to church services; she took in and cared for a pregnant teenager who had been abandoned by her own family; this woman and her subsequently born child became a part of petitioner's family; since her arrival in the United States, she has always been self-supporting. The Board also noted that petitioner claimed to be in poor health and that medical care for her conditions are not available in the Dominican Republic.
 
 
 19
 The Board did consider the alleged circumstances under which petitioner was convicted. The court summarized her story as follows:
 
 
 20
 The respondent testified at the hearing that she went to the Dominican Republic for a visit and planned to return to the United States on a direct flight to New York. One of her neighbors asked if she would be willing to fly to New York via Puerto Rico as he had two suitcases containing "pharmaceuticals" from Germany he needed to transport to Puerto Rico. Her neighbor explained that the pharmaceuticals were to be used to start a pharmacy in Puerto Rico. She claims to have been told that by personally transporting the pharmaceuticals, the payment of duty on these items could be avoided. Her neighbor also had some packets of pharmaceuticals that were to be carried on her person. Someone would meet her at the airport to receive the pharmaceuticals. In return, her neighbor would compensate her for her travel expenses. The respondent agreed. As she already had her ticket, the respondent decided to use the money instead to purchase a second ticket for a young woman named Angelica whom she had taken into her home several years before and whom she essentially raised as her own daughter. The respondent and her companion flew to Puerto Rico, although due to inclement weather, they flew one day later than was originally planned. When the respondent went through customs, she was stopped and questioned. She freely admitted to carrying five packets of "medicine" concealed under her clothing. These packets were to be given to a gentleman whose name she supplied. The respondent testified that she had no idea she was actually transporting illegal drugs. She was arrested and subsequently convicted of knowingly, willfully, intentionally, and unlawfully importing cocaine into the territory of the United States. The respondent has no other criminal record.
 
 
 21
 (App. 8).
 
 
 22
 After examining all of the equities presented in her favor the Board stated: "We consider this to be a close case.... While she has demonstrated the existence of equities in her favor, some of which can be considered outstanding or unusual including her long period of residence and family ties, we nonetheless find that the equities presented do not outweigh the seriousness of her criminal conduct." (App. 9-10).
 
 
 23
 The significance of her drug conviction was highlighted by the Board:[2]
 
 
 24
 The respondent stands convicted of importing cocaine into the territory of the United States in violation of federal law. Although she has accepted responsibility for her conduct and expresses remorse, this does not take away from the fact that she engaged in a very serious crime against society when she was a mature adult. Indeed, the federal judge who sentenced her saw fit to impose a 5-year period of incarceration, a significant sentence, notwithstanding the underlying circumstances of her crime and her lack of a prior criminal record. Needless to say, the presence, sale, and use of illicit narcotic drugs in the United States destroy the lives of thousands of American citizens each year. Apart from the considerable number of people in this country who become the victims of homicides related to the unlawful traffic of drugs, thousands of other persons become disabled by their addiction to drugs. There are also countless numbers of individuals who suffer crimes against their persons and property at the hands of drug addicts and criminals who use the proceeds of their crimes to support their drug needs. This unfortunate situation has reached epidemic proportions and it tears the very fabric of American society.
 
 
 25
 (App. 10). Other circuits have recognized "that the immigration laws clearly reflect the strong Congressional policy against lenient treatment of drug trafficking offenders." Blackwood, 803 F.2d at 1167; see also Ayala-Chavez, 944 F.2d at 641.
 
 
 26
 The weight the Board gave to several of petitioner's favorable factors were lessened by other "mitigating" factors. For example, the significance of her family ties in the United States were offset by the fact that she still has several children and grandchildren living in the Dominican Republic. Rodriguez-Reyes testified at her hearing that all she worked for in the United States was to buy plane tickets so she could see her family. The Board also found that, although petitioner is in poor health, she failed to show that treatment for her various ailments are not available in her homeland. As the Board observed, she lived for 45 of her 61 years in the Dominican Republic and "is not a stranger to her native land, its language, or its culture." (App. 11).
 
 
 27
 When an alien is deportable due to a criminal conviction, "rehabilitation, while not an absolute prerequisite for relief in section 212(c) cases, is an important factor.... Indeed, rehabilitation 'ordinarily' will be required before relief will be granted." Vergara-Molina, 956 F.2d at 685 (citation omitted). The Board, while noting that petitioner has had no other problems with the law and that she admits to being both remorseful for and ashamed by her conduct, was not persuaded by the evidence presented "that the respondent is genuinely rehabilitated," and stated it "would require such a showing in this case given the seriousness of her crime." (App. 10).
 
 
 28
 Although there is only narrow "substantive" judicial review of the Board's decision to grant or deny a waiver under section 212(c), courts have reviewed deportation determinations "procedurally" to ensure that the alien received full and fair consideration of all relevant factors presented. See Zamora-Garcia v. INS, 737 F.2d 488, 490 (5th Cir.1984). In some cases, the Board's decision to deny relief from deportation has been reversed for failure to consider all the relevant factors. See, e.g., id. at 491 (citing several cases remanded for reconsideration in light of relevant factors not considered); Akinyemi v. INS, 969 F.2d 285 (7th Cir.1992) (failure to address petitioner's evidence of rehabilitation was error requiring remand). In the present case, however, the Board did consider all the relevant evidence presented to it.
 
 
 29
 The ruling of the BIA "will be upheld unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." McLean, 901 F.2d at 205 (citation omitted). The Board in this case set forth in detail its rational analysis of the equities presented in this case. All petitioner has shown here is that she would weigh the factors differently. Id.
 
 III.
 
 30
 Rodriguez-Reyes' final argument is that her health condition has worsened since the time of the Board's decision in March 1992. Petitioner underwent triple by-pass surgery in April 1992. In addition to urging that we consider this information in her appeal from the denial of the requested section 212(c) waiver, petitioner has filed a motion to reopen her case with the Board of Immigration Appeals. The BIA has not yet ruled on that motion.[3]
 
 
 31
 The information concerning her open heart surgery and the availability of medical treatment in the Dominican Republic for this condition is not in the record before us. If the case is reopened, the Board may well find that the current health of the petitioner will tip the balance in what the Board already has determined to be a close case. However, until either the Board denies petitioner's motion to reopen or the case is reopened and the Board issues a decision finding that the information does not significantly alter the balance of the equities, we are in no position to consider the change in her health conditions that occurred after the Board entered its decision.
 
 CONCLUSION
 
 32
 As the Board noted, and we agree, this is a close case. It is in such close cases where the abuse of discretion standard holds the most weight. Merely because we may have reached a different conclusion on the same set of facts does not permit us to reverse a ruling by the Board. When the Board's decision is supported by substantial evidence, as it is here, "Congress has mandated that we defer to the Board and affirm." Blackwood, 803 F.2d at 1168. "Congress has entrusted to the Attorney General of the United States the responsibility of exercising discretion in immigration matters. The Courts will not substitute their discretion for that of the Attorney General." Balani, 669 F.2d at 1162.
 
 
 33
 It is not our role to reweigh the factors presented or to second guess the Board. Finding no abuse of discretion, we AFFIRM the denial of petitioner's application for waiver from deportation pursuant to section 212(c) of the Immigration and Nationality Act.
 
 
 34
 MERRITT, Chief Judge, dissenting.
 
 
 35
 Unlike my colleagues and the Board of Immigration Appeals, I do not regard this as a close case. On the basis of the facts which are fairly stated in the court's opinion I regard the decision of the Attorney General in this case to be extremely unfair. I would not defer to his administrative decision. As drug crimes go, this one is minor. There is no evidence that this woman's description of her crime is inaccurate or that she is not fully and completely rehabilitated. If we are simply going to defer to the Attorney General in cases of this kind, we have no need for the doctrine of judicial review of administrative decisions in such immigration cases. We should not judicially legitimize such decisions rendered in the name of the Attorney General of the United States. The Attorney General is, after all, both the prosecutor and the decision-maker in these deportation cases. For this reason the cases deserve a close look if we are going to take any look at all. I am afraid we have simply deferred without sufficiently engaging our own judgment or conscience.
 
 
 
 [1]
 The Attorney General has delegated his authority to enforce the Immigration and Nationality Act to specified authorities in the Immigration and Naturalization Service. 8 C.F.R. §§ 2.1, 212.3
 
 
 [2]
 While the Board found significant the sentencing judge's willingness to impose a five-year sentence on Rodriguez-Reyes as a factor offsetting the underlying circumstances of the crime and lack of a prior criminal record, it is unclear from the record the quantity that Rodriguez-Reyes possessed, which, if it exceeded 500 grams, could have dictated a minimum sentence of five years with four years supervised release. 21 U.S.C. § 960
 
 
 [3]
 Apparently, the motion was mailed to the wrong address, and it is not clear whether anything is actually pending before the BIA at this time