Roque Antonio BELLIDO–
TORRES, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 92–1480.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1992.

Decided April 29, 1993.

James Hallagan (argued), Minsky, McCormick & Hallagan, Chicago, IL, for petitioner.

Fred Foreman, U.S. Atty., Criminal Div., Chicago, IL, William J. Howard, David J. Kline, Robert Kendall, Jr., Anthony W. Norwood (argued), Dept. of Justice, Office of Immigration Litigation, Washington, DC, Richard L. Thornburg, U.S. Atty. Gen., Washington, DC, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, for respondent.

Before POSNER and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Petitioner Roque Antonio Bellido–Torres petitions for review of a final order of deportation, including a denial of discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). An immigration judge had originally granted a waiver, but the Board of Immigration Appeals sustained the appeal of the Immigration and Naturalization Service, and ordered Bellido deported to Belgium or alternatively to Peru.

Bellido concedes that he is a resident alien and is deportable by reason of convictions for drug offenses. He fulfills the statutory requirements, as currently construed, for consideration of discretionary relief from deportation. *See Akinyemi v. INS,* 969 F.2d 285, 288 n. 3 (7th Cir.1992). Even where an applicant meets the statutory requirements under § 212(c), however, the Attorney General or his delegate must determine as a matter of discretion whether an applicant merits the relief sought, and the alien bears the burden of demonstrating that his application merits favorable consideration. *Matter of Marin,* 16 I & N Dec. 581 (BIA 1978); *Matter of Buscemi,* 19 I & N Dec. (BIA 1988); *Akinyemi,* 969 F.2d at 288.

Decisions of the BIA, principally *Matter of Marin,* set out the framework for the Board's exercise of discretion, which requires a balancing of the social and humane considerations presented in an applicant's favor against the adverse factors evidencing his undesirability as a permanent resident. *Matter of Marin,* 16 I & N Dec. at 584. The BIA has articulated a list of relevant factors, both favorable and unfavorable, to be weighed in the context of a 212(c) application. The favorable factors include family ties within the United States, residence of long duration—particularly if it begins at a young age, evidence of hardship to the alien and his family if deportation occurs, service in this country's armed forces, a history of employment, existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to the alien's good character—*e.g.,* affidavits from family, friends and responsible community representatives. *Id.* at 584–85.

Factors deemed adverse to an applicant seeking 212(c) relief include the nature

and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record—and if so the nature, recency, and seriousness of the offense, and the presence of other evidence indicative of the alien's bad character or undesirability as a permanent resident. *Id.* at 584. One or more of these adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case. *Id.*

■ "As the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional off-setting favorable evidence, which in some cases may have to involve unusual or outstanding equities." *Id.* at 585. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly when it relates to the trafficking or sale of drugs. *Id.* at 586 n. 4. Although in its earlier decisions the Board stated that an alien with a criminal record "will ordinarily be required to make a showing of rehabilitation," the BIA later took pains to make clear that rehabilitation is a factor to be considered, and not "an absolute prerequisite to a favorable exercise of discretion in every case involving an alien with a criminal record." *Matter of Edwards,* Int.Dec. 3134, 1990 WL 289514, 1990 BIA LEXIS at *13 (BIA May 2, 1990). Rather, a section 212(c) applicant with a criminal conviction must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. *Id.*

■ We review the Attorney General's discretionary denials for an abuse of discretion. *Garcia–Lopez v. INS,* 923 F.2d 72, 74 (7th Cir.1991). "Our examination of the denial is limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." *Id.* (citing *Villanueva–Franco v. INS,* 802 F.2d 327, 329 (9th Cir.1986)); *Akinyemi v. INS,* 969 F.2d 285, 288 (7th Cir.1992). An abuse of discretion arises when a decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Hernandez–Patino v.*

*INS,* 831 F.2d 750, 752 (7th Cir.1987) (quoting *Achacoso–Sanchez v. INS,* 779 F.2d 1260, 1265 (7th Cir.1985)); *Vergara–Molina v. INS,* 956 F.2d 682, 684 (7th Cir.1992).

■ Bellido, a 32–year–old native and citizen of Peru, was admitted to the United States in 1973 as a lawful permanent resident. Bellido began selling cocaine in 1981 and continued until 1987, when he was arrested in Chicago for selling to an undercover police officer. The charges stemmed from three transactions: the first transaction took place on February 6, 1987, involving the sale of 2 to 3 ounces of cocaine; the second transaction occurred a few months later, again involving the sale of 2 to 3 ounces of cocaine; and the third transaction took place on March 17, 1987, involving the sale of 12 to 13 ounces of cocaine. Prior to trial, Bellido jumped bail and fled to Miami, Florida, where he continued to use cocaine and, in 1988, was convicted for possession and sentenced to time served. On February 9, 1989, Bellido was arrested pursuant to a warrant issued in Illinois and returned to Chicago to stand trial on the 1987 charges. Bellido was convicted on April 7, 1989, in the Circuit Court of Cook County, Illinois, on three counts of delivery of a controlled substance and was sentenced to ten years imprisonment.

In its written decision, the Board first considered the factors in favor of waiver. Bellido presented evidence that he had resided continuously in the United States since his arrival at age 14 and that his mother, sister and older brother were United States citizens. In addition, Bellido demonstrated that he worked in the United States on a regular basis since age 15, attended junior high and high school in the United States and enrolled in one semester at a local community college. The Board also considered evidence that, after leaving home in 1978, Bellido had little contact with his family for a number of years and that he has a daughter whom he has not seen since her birth in 1987 and whom he does not support. Since his incarceration, Bellido has reestablished a relationship with his family. The BIA concluded that Bellido's family ties demonstrated "a favorable but not unusual or outstanding equity." In addition,

the BIA found that Bellido's period of residence was not an outstanding equity because during the time he had resided in the United States he engaged in criminal activity for six of the years and fled justice for five.

The BIA then considered the rehabilitation evidence submitted by Bellido. The BIA recounted Bellido's testimony that he plans never to use drugs again, that he plans to return to school to obtain a degree in hotel management, and that he regretted the crimes he committed and the harm he had caused his family. Additionally, the Board took note that, while in prison, Bellido attended a number of college courses, received drug counseling through a 12–week substance abuse program and enrolled in Narcotics Anonymous. The Board found that, within his prison environment, Bellido had "demonstrated [a] good promise of rehabilitation".

However, the Board found, his promise to change his past misconduct was insufficient to grant him relief. In this regard, the Board considered evidence that Bellido had used and sold cocaine for eight years but never sought treatment previously, had fled justice and continued to use drugs after his arrest in 1987, was again arrested and convicted while in Florida for possession of cocaine, and that he did not stop his drug involvement until his imprisonment in 1989. The Board found that Bellido's "present claim of rehabilitation does not carry significant weight as a favorable factor in the discretionary balancing for section 212(c) relief." The Board concluded that "though strong, [the equities] are not outstanding and do not overcome his drug trafficking crimes to warrant a grant of section 212(c) relief." The Board sustained the Service's appeal and ordered Bellido deported.

Bellido first contends that the Board's finding of no outstanding equities inexplicably departed from established policies because the Board reached a different result under identical facts in *Matter of Buscemi, supra*. Second, Bellido argues that the Board abused its discretion by failing to give proper consideration to evidence of his rehabilitation. Bellido argues here that the Board did not give significant weight to its

finding that he had demonstrated a good promise of rehabilitation, thereby departing from established policies by requiring him to show "complete rehabilitation." Bellido's arguments are unpersuasive.

In *Matter of Buscemi, supra,* Buscemi was a 26–year–old single man with no dependents. The Board considered evidence presented by Buscemi that his immediate family resided in the United States, that he had helped to support his family financially and as a father figure, that he remained close with his family, that he had resided in the United States for 17 years and that such residence began at an early age, that he had a history of gainful employment, and that he was forced to grow up under difficult circumstances. The Board considered Buscemi's 17 years of residence in this country, beginning at the age of nine, to be a particularly outstanding equity. Although the Board found outstanding equities under the facts of that case, it ultimately denied the applicant's request for 212(c) relief.

Bellido, however, had been estranged from his family for a number of years. Moreover, his mother and sisters are in medical practice together and are not financially dependent upon him. Nor are there any indicia that Bellido was forced to grow up under particularly difficult circumstances. In addition, the Board found that Bellido's residency in the United States was not an outstanding equity because during this time he engaged in criminal activity for six years and fled justice for five. These facts are sufficiently distinct to explain the disparate treatment in these two cases.

In any light, a 212(c) application is evaluated on a case-by-case basis. *Matter of Edwards,* 1990 WL 289514. To uphold the Board's denial of waiver, we need only find that it articulated a rational explanation for its decision, and that it did not inexplicably depart from an established policy. *Vergara–Molina,* 956 F.2d at 684. Regardless of the similarities in Bellido's case with that in *Buscemi,* the Board weighed the evidence within the *Marin* framework and concluded that Bellido had not shown unusual or outstanding equities. The Board's decision was not

irrational, nor did it depart from an established policy.

Moreover, we believe the Board did give proper consideration to the evidence of rehabilitation. The Board considered the evidence presented by Bellido that he plans never to use drugs again, that he intends to return to school, and that he regrets the crimes he committed and the harm caused to his family. The Board also recounted his efforts towards rehabilitation while in prison, including his enrollment in college courses and participation in a substance abuse program. The Board found that, within his prison environment, Bellido had "demonstrated [a] good promise of rehabilitation", but concluded that this evidence did not have significant weight in light of his repeated drug use and drug-related offenses over a span of years. We think the Board could properly doubt whether Bellido would avoid criminal activity once released from prison.

Bellido argues that the Board required him to show "complete rehabilitation" and in so doing, departed from established policies. We understand the Board's order, however, as weighing the degree of persuasiveness of Bellido's showing of rehabilitation along with all other favorable factors in making its judgment that he had not shown outstanding equities, and we see no abuse of discretion nor departure from established policy.

Petition for review is DENIED.