48 F.3d 1219
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Girolamo Vito PALAZZOLA Petitioner-Appellant,
v.
IMMIGRATION AND NATURALIZATION SERVICE Respondent-Appellee.
 No. 94-3089.
 United States Court of Appeals, Sixth Circuit.
 March 9, 1995.
 
 On Appeal from the Board of Immigration Appeals, No. Avs-cem-oza.
 BIA
 REVERSED.
 Before: KEITH and NELSON Circuit Judges, and HORTON, District Judge.*
 PER CURIAM:
 
 
 1
 Petitioner-Appellant, Girolamo Vito Palazzola ("Palazzola"), a native and citizen of Italy, appeals the final deportation order of the Board of Immigration Appeals (the "BIA" or "Board"). For the reasons that follow we reverse and remand.
 
 I. STATEMENT OF THE CASE
 
 2
 In the proceedings below, Palazzola conceded deportability as an alien convicted of a drug related offense, but applied for a waiver of deportation pursuant to section 212(c) of the Immigration and Nationality Act (the "Act"). 8 U.S.C. Sec. 1182(c). An immigration judge denied petitioner's application and ordered him deported to Italy. The petitioner thereafter appealed the immigration judge's decision to the Board. The Board affirmed the immigration judge's decision and issued a final order of deportation. This timely appeal followed.
 
 II. STATEMENT OF FACTS
 
 3
 Palazzola is an Italian citizen, born in 1947, who first came to the United States in 1966, when he was nineteen years old. In 1969, he became a lawful permanent resident of the United States on the basis of his marriage to his wife, Diane Palazzola, a United States citizen. He has resided in this country continuously since 1966. Palazzola and his wife are the parents of four sons, all of whom are United States citizens, ages twenty-four, twenty-two, eighteen and fifteen. The Palazzola family lives in Sterling Heights, Michigan, in a house they purchased in 1978.
 
 
 4
 On August 17, 1989, Palazzola was convicted by a jury of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. The conviction arose from activities that took place in February and March, 1984.
 
 
 5
 At the waiver hearing, Jerome Cox, an FBI Special Agent testified that Palazzola acted as a "go-between" between certain drug sellers and a drug purchaser. Agent Cox further testified that Palazzola had numerous telephone conversations with the sellers. During some of these conversations, Palazzola was said to have been arguing over payment for a delivery he made. The testimony of Agent Cox, as articulated in the government's brief, does not indicate whether Palazzola was aware that he was transporting drugs. Apparently, Agent Cox was not certain that the package delivered by Palazzola contained drugs. His testimony was that it was his "investigatory supposition" that the package contained cocaine.
 
 
 6
 As a result of the FBI investigation, Palazzola was arrested in April 1984, and charged in a one-count indictment with conspiracy to distribute cocaine. While awaiting trial Palazzola was free on $25,000 bond. As required he appeared for every court date.
 
 
 7
 Palazzola's trial date was delayed for five years during the pendency of an interlocutory appeal filed by the government after the trial judge suppressed all evidence obtained through certain court-ordered wiretaps. See United States v. Alfano, et al., 838 F.2d 158 (6th Cir.1988). During that period, Palazzola remained free on bond.
 
 
 8
 The trial went forward in 1989, and on August 17, 1989, Palazzola was found guilty of conspiracy to distribute cocaine. He was sentenced to seven years imprisonment and fined $5,000. Palazzola served two years and four months before being paroled. During his incarceration, Palazzola's prison Progress Reports indicated that he "maintained clear conduct throughout his incarceration," and "established a good rapport with staff and co-workers." While in prison, Palazzola worked as a stone mason. His foreman wrote that Palazzola was an outstanding worker on a number of masonry projects during his stay at the Rochester prison facility.
 
 
 9
 Palazzola's wife and four sons testified at the hearing. They testified that Palazzola's imprisonment posed an emotional and economic hardship on the family. The two eldest sons testified that they would remain in the United States if their father were deported. The two youngest sons, who do not speak Italian, and Palazzola's wife would accompany him to Italy if he is forced to leave the United States.
 
 
 10
 Additional testimony showed that upon Palazzola's release from prison, he returned to his family and obtained employment as a bricklayer. He regularly attended church and was very active in two religious societies devoted to community service. Palazzola complied with the terms of his parole, which expired February 18, 1994, and fully paid the $5,000 fine imposed by the court.
 
 
 11
 Palazzola testified in his own behalf, stating he had never before been in trouble with the law and would never again become engaged in any criminal activity. Further, he stated that he takes responsibility for his acts. On cross-examination, however, Palazzola denied that he discussed the sale of narcotics over the phone and indicated he had no idea what he did to deserve his conviction.
 
 
 12
 On May 17, 1993, the immigration judge denied Palazzola's application for section 212(c) relief and ordered him deported to Italy. In making this determination the court balanced the positive factors against the negative.
 
 
 13
 The court ruled that Palazzola established "unusual and outstanding equities," consisting of his length of residence in the country and his family ties. It found, however, that the hardship to Palazzola would be minimal because he was healthy and possessed job skills as a mason. The court determined that his family, on the other hand, would suffer great hardship if Palazzola were deported.
 
 
 14
 After weighing the positive and negative factors the court determined that Palazzola's lack of candor regarding his involvement in the drug conspiracy cast doubt as to his rehabilitation. The court ultimately found that the seriousness of the offense coupled with the lack of rehabilitation outweighed the positive equities and therefore denied Palazzola's section 212(c) claim of waiver.
 
 
 15
 In his appeal to the Board, Palazzola argued that the immigration judge did not give adequate consideration to all the evidence in the record. He also argued that the immigration judge abused his discretion by finding that he had not been rehabilitated. The Board found that the immigration judge properly balanced the positive and negative factors, and in a January 11, 1994, decision, affirmed the lower court's decision.
 
 III. DISCUSSION
 A. Standard of Review
 
 16
 This Court reviews decisions of the Board denying section 212(c) relief for an abuse of discretion. Craddock v. INS, 997 F.2d 1176, 1178 (6th Cir.1993).
 
 
 17
 B. Balancing Equities Against Adverse Factors
 
 
 18
 Palazzola argues he is entitled to a waiver subject to the provisions of section 212(c), which states in pertinent part:
 
 
 19
 Aliens lawfully admitted for permanent residen[ce] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than [for security and related grounds, and international child abduction].
 
 
 20
 8 U.S.C. Sec. 1182(c). This Court has held that section 212(c) relief is applicable to a lawfully admitted alien, whether or not such alien is returning from abroad, with an unrelinquished domicile of seven consecutive years. See Gonzalez v. INS, 996 F.2d 804, 806 (6th Cir.1993). Although not automatically entitled to a waiver, Palazzola fits within the class of deportable aliens eligible for consideration of a section 212(c) waiver.
 
 
 21
 In Matter of Marin, 16 I & N Dec. 581, 584 (BIA1978), the Board established a balancing test to be followed when determining whether relief should be granted under section 212(c). The adverse factors demonstrating undesirability as a resident alien must be balanced against "the social and humane considerations presented" in favor of granting a waiver. Id. As the negative factors increase there must be present additional offsetting positive factors, which may require, in some cases, a showing of "unusual or outstanding equities." Id. at 585.
 
 
 22
 In Marin, the Board listed several factors it deemed relevant in making a 212(c) determination. Adverse factors included: 1) the nature and underlying circumstances of the exclusion ground at issue; 2) other violations of this country's immigration laws; 3) the existence of a criminal record; and 4) other evidence of an applicant's bad character or undesirability as a permanent resident of this country. Id. at 584. Favorable factors include: 1) family ties within the United States; 2) residence of long duration in the U.S.; 3) evidence of hardship to the respondent and his family if deportation occurs; 4) service in the U.S. armed forces; 5) a history of employment; 6) the existence of property or business ties; 7) evidence of value and service to the community; 8) proof of genuine rehabilitation if a criminal record exists; and 9) other evidence of good character. Id. at 584-85.
 
 
 23
 In cases, such as this, where the applicant has a criminal conviction, the Board has determined that a clear showing of rehabilitation is not an absolute prerequisite to a favorable exercise of discretion. Matter of Roberts, Interim Decision 3148 (BIA1991).
 
 
 24
 Palazzola argues that the Board misapplied the factors in balancing the equities present in his case against the negative factors. Specifically, he contends that the Board failed to take into consideration that the one blemish on his record was a crime he committed over nine years before his deportation hearing. He points out that the Board's opinion is devoid of any recognition or consideration of his spotless record over the nine years preceding his hearing. Further, the record fails to explicitly take into consideration that five years passed between Palazzola's arrest and conviction. During that time he maintained steady employment, paid his income taxes and supported his family. None of these positive factors were specifically articulated in the Board's opinion.
 
 
 25
 One factor relevant in determining whether section 212(c) relief is warranted is the nature and recency of any criminal record. Marin, 16 I & N Dec. at 584. In the instant case, the Board apparently found the recency of a crime relevant to a determination of rehabilitation. In support of this contention, Palazzola points to the Board's statement, "[c]onfined aliens and those who have recently committed criminal acts will have a more difficult task in showing that discretionary relief should be exercised in their behalf than aliens who have committed the same offenses in the more distant past." Id. at 588.
 
 
 26
 Although the Board's decision in the instant case listed several of the positive factors put forward by Palazzola, conspicuously absent is any mention of the recency of his conviction. The Immigration and Nationalization Service correctly argues that the Board need not write an "exegesis" on each factor it considers. The Board must, however, provide sufficient indication in its opinion that it has taken into consideration each factor in its balancing analysis. A reviewing court must have confidence that the Board gave some weight to each factor in reaching its conclusion. In the instant case, this Court does not have confidence that the Board considered the recency of Palazzola's conviction in its balancing analysis.
 
 
 27
 The Board acknowledged in its opinion that the recency and length of one's incarceration is probative as to whether rehabilitation has occurred. See In re Palazzola, No. Agt-xyd-ujl, slip op. at 2 (BIA Jan. 11, 1994) (J.App. at 3). The opinion also listed several other factors it considered in reaching its decision. The opinion explicitly considered: 1) length of residence; 2) family ties; 3) hardship to the family; 4) hardship to the applicant; 5) community involvement; 6) length of steady employment; and 7) educational improvement. Id. at 3-4. Although the Board went to great lengths to document each of the factors it considered in balancing the equities against the negative factors, it clearly did not consider that Palazzola's conviction was more than nine years prior to the waiver hearing, and that during that time Palazzola was a model citizen.
 
 
 28
 In light of the Board's failure to adequately consider an essential element of petitioner's positive equities, the Board abused its discretion in denying Palazzola section 212(c) relief. See Akinyemi v. INS, 969 F.2d 285, 289 (7th Cir.1992) (Board's failure to consider rehabilitation was abuse of discretion). Thus we remand this matter for a full consideration of all factors in the balancing analysis.
 
 IV. CONCLUSION
 
 29
 For the reasons herein discussed, the decision of the Board of Immigration Appeals is REVERSED and REMANDED for further review consistent with this opinion.
 
 
 30
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 31
 I regret that I am unable to concur in the court's disposition of Mr. Palazzola's petition for review of the deportation order.
 
 
 32
 The Board of Immigration Appeals was well aware that Mr. Palazzola's drug conspiracy conviction dated from August 17, 1989. The board specifically cited that date (which was two years and seven months prior to the waiver hearing) in the second paragraph of its decision. Later in the decision the board specifically referred to the nature, recency and seriousness of a criminal record as factors to be considered in determining whether relief should be granted under Sec. 212(c) of the Immigration and Nationality Act. The recency of Mr. Palazzola's conviction obviously was not overlooked in the board's balancing analysis.
 
 
 33
 Neither did the board overlook Mr. Palazzola's record in prison. The board noted that Palazzola served a little over two years of a seven year sentence before being paroled; that he received no disciplinary actions in prison; that he worked there as a mason; and that he was given a gate pass to work outside the prison area. All of these factors were cited by the immigration judge as well, together with the fact that Mr. Palazzola took GED classes in prison.
 
 
 34
 It is true that the board's decision did not mention that the crime of which Mr. Palazzola was convicted occurred five years before he went to prison. The reason this fact was not mentioned, in all probability, is that nowhere in the 26 page brief that Mr. Palazzola filed with the board in support of his appeal from the decision of the immigration judge did Palazzola contend that the passage of time was a factor that had been overlooked. Mr. Palazzola argued that the immigration judge had disregarded other factors--Palazzola's "perfect record in prison," e.g., "and his unusually significant contributions to the institution where he was confined"--but not until he filed his brief in this court did Mr. Palazzola contend, for the first time, that the timing of his criminal conduct had been overlooked.
 
 
 35
 Mr. Palazzola's able counsel has done a persuasive job of explaining the equities that exist in favor of his client. Perhaps the immigration judge and the board would have been well-advised to grant the discretionary relief being sought in this case. I cannot say that the board abused its discretion, however, in failing to address an argument that was never presented to it. Accordingly, I would deny the petition for review.
 
 
 
 *
 The Honorable Odell Horton, United States District Judge for the Western District of Tennessee, sitting by designation